MERRILL E. BULSON, an Infant, by ISAAC F. BULSON, Next Friend, Respondent, v. INTERNATIONAL SHOE COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, May 24, 1915.

1. NEGLIGENCE: Personal Injuries: Leveler Machine. The plaintiff, a minor, was operating a leveler machine in the defendant's shoe factory and sues to recover damages for injury to one of his thumbs. The machine which he was operating had two treadles, and while he was endeavoring to pull a shoe from the last, he lost his balance, inadvertently stepped on the wrong treadle, and the thumb of his left hand was caught and mashed. *Held*, that the demurrer to the evidence was properly overruled.

2. ———: Master and Servant: Minor. The master is liable for failure to instruct a minor unless both the danger and the means of avoiding it are apparent and within the comprehension of the servant. And where the servant is a minor, the master must

put his warnings in such language as to be sure that the serv-
ant understands and appreciates the danger.  It is not enough
that he should do his best to make the servant understand,
he must actually understand and appreciate the danger.

3. **INSTRUCTIONS: Proximate Cause.**  It is error to submit, in
an instruction, a question, raised in the petition, of negligence
in failing to instruct plaintiff in the use of the brake, and of
whether or not such negligence was the approximate cause of
the injury, when the plaintiff's own evidence demonstrates
beyond question that the absence of instructions relating to the
use of the brake or clutch could not have been a proximate
cause.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,*
Judge.

REVERSED AND REMANDED.

*Irwin & Peters* and *George B. Logan* for appellant.

*A. T. Dumm* and *D. F. Calfee* for respondent.

JOHNSON, J.—Plaintiff, a minor eighteen years
of age, was injured while operating a machine in
defendant's shoe factory at Jefferson City, and sued
for the recovery of his resulting damages on the ground
that his injury was caused by negligence of defendant.
The answer contained a general denial and pleas of
assumed risk and contributory negligence.  The ver-
dict was for plaintiff in the sum of $1000, and following
the overruling of its motions for a new trial and in
arrest of judgment, defendant appealed.

. The machine, called a leveler, at which plaintiff
was working at the time of his injury, was operated
by steam power and was used to level and give proper
form to shoe soles after attachment to their uppers.
It was ponderous and complicated in structure but its
operation was comparatively simple, did not require
special skill or long experience, and was attended by

no other probable danger to the operator than that of having his hand caught and mashed between the form and last when they moved into close contact to level and shape the intervening sole by the exertion of powerful pressure. Standing in front of the machine —his proper position—the operator faced two pairs of forms and lasts, one for treatment of right, the other of left shoes, with a space of nine or ten inches between them. Each last was in the form of a sole and was attached, bottom upward and on a horizontal plane, to the end of an upright leg. The form above it was also in the shape of a sole but larger and, when the machine was at rest, faced the operator on a vertical plane. The arm to which it was affixed, as well as the leg of the last, was movable and when a shoe was placed on the last and the power applied to the machine, the form and last moved together along the line of an arc eighteen or twenty inches in length. The first contact was at the heel, but the two surfaces came into complete but progressive contact with a rolling, rocking motion. The pairs were moved alternately by the operator who applied the power by pressing his foot on the treadle for the pair he wished to set in motion and when one pair was in operation the other automatically stopped. The two treadles were two or three inches from the floor and were two inches apart. The lasts were detachable from the legs and it was necessary that the size of the lasts should correspond to the size of the shoes being treated. Between the two legs, but a foot or more below the surface of the upturned lasts, was the handle of a clutch, or brake, by which the operator could stop the machine instantly by throwing the belt to an idle wheel. In the usual method of operation a shoe was fitted over the right last, the treadle was pressed with the foot, and on the return of the last the shoe was removed. In the meantime a shoe was put on the left last and as the right shoe was removed the left treadle was pressed, and so on. The

shoe was intended to fit loosely over the last to be easily removed, and, in the proper manipulation of the shoes, during the entire operation, it was not necessary for the operator's hands to be placed in a position of danger.

Plaintiff, whom the evidence depicts as a person of average intelligence, capacity and judgment for one of his age, had been working on the machine only two days and had had no other experience. At the time of his injury he was working upon a case of number 5 unlined shoes and using number 5 lasts. He states, and there is substantial evidence to support his statement, that sometimes shoes of the small sizes fitted tightly on the lasts and were removed with difficulty, and that the shoe on the right last—the removal of which occasioned the injury—fitted so tightly that in his attempt to remove it he lost his balance to such an extent that instead of pressing on the left treadle to apply the power to its corresponding last and form, he inadvertently stepped on the right treadle, with the result that the right shoe which he was attempting to remove was moved into contact with the form and the thumb of his left hand was caught and mashed, necessitating its amputation.

The specifications of negligence in the petition which is voluminous may be reduced to these four specific acts: First, a negligent failure to give plaintiff, who was known to be a minor and inexperienced, proper instructions to enable him to run the machine with reasonable safety to himself. Second, giving him improper and dangerous directions relating to the operation of the treadles. Third, failing to warn him of the risks and dangers of the work. Fourth, negligently furnishing him shoes of irregular size which purported to be, and should have been, of uniform size, and thereby adding an unnecessary risk to the normal hazards of the operation.

The evidence of plaintiff relating to the first and third charges tends to show that the foreman gave him most meager and inadequate instructions and only a general warning that if he allowed his hand to be caught between the form and last it would be mashed, a fact which, as plaintiff remarked, "anybody can see." The machine was in operation when plaintiff was employed and the foreman took him to the machine, told him to watch and carefully note its operations, left him for an hour and returning asked him, "Do you think you can run it now?" Plaintiff replied, "I believe I can," and was directed to go to work. While he was watching the machine, the operator showed him how to take the shoes off and put them on, how to select the proper lasts and how to work the treadles, but did not show him the brake and its uses, nor inform him of the risk of tight-fitting shoes and how to avoid it. Sometime after he began to work a tight shoe gave him trouble on the right last and he was compelled to let go of the shoe which was in motion, with the result that it was subjected to a second pressure and was damaged. The foreman brought this shoe back to plaintiff and warned him that shoes thus damaged would be charged to him, but did not tell him how to avoid the risk of removing tight shoes.

Afterward the foreman noticed that plaintiff in working the treadles used his right foot for the right treadle and his left foot for the left (a method which plaintiff's evidence strongly tends to show was the only proper and reasonably safe one), but the foreman told him that was too slow and ordered him to use his right foot for both treadles. Plaintiff obeyed the order and was attempting to press the left treadle with his right foot on the occasion in question, with the result that, in combination with his effort to pull the tight shoe off the last, it affected his equilibrium and caused his foot to slip over to and press down upon the right treadle.

As to the fourth charge of negligence the evidence of defendant is that since the shoes were entirely machine made, it was impossible for any variations to occur in sizes made from the same last and that there was no such occurrence in the operation of the machine as a tight-fitting shoe, but the evidence of plaintiff to the contrary is substantial and, for present purposes, we must accept it as conclusive.

Counsel for defendant earnestly contend that the court erred in not sustaining the demurrer to the evidence and on this branch of the case the initial question of importance is the nature of the duty defendant owed to plaintiff for his protection and security in the operation of a machine which, though its proper operation called for no great skill or preparation, was an instrumentality for the application of great power and if not properly handled by the operator, would be highly dangerous to him.

The well-known general duty of a master to exercise reasonable care to furnish his servant a reasonably safe place in which to work, and with reasonably safe tools and appliances, embraces the particular duty where an inexperienced servant is employed upon dangerous work, to give the servant such instructions in the proper method of doing the work and such warning of natural dangers and of dangers which will attend a departure from the proper method as is reasonably required by the servant's inexperience and lack of proper knowledge and which will enable the servant, with the exercise of reasonable care, to perform the duties of his employment with reasonable safety to himself. [26 Cyc. 1176, 1177.]

This duty the master owes to an inexperienced adult possessed of the judgment and care presumed in the average adult, but with respect to a minor, the duty must take into account the further fact of minority, with its usual concomitants of immature judgment and care, and the master must give such instructions

and warnings as are reasonably required to obviate the risks born of such immaturity. [26 Cyc. 1080; 3 Labatt, Master & Servant, 1154, 1155.]

It is said by the latter author: "The rule actually applied by the courts is merely this: The master is liable for the failure to instruct a minor unless both the danger and the means of avoiding it are apparent and within the comprehension of the servant." And the former author says (p. 1176) "where the servant is a minor, the master must put his warning in such plain language as to be sure that the servant understands and appreciates the danger. It is not enough that he should do his best to make the servant understand—he must actually understand and appreciate the danger." The cases in this State recognize these rules. [Vanesler v. Cigar Co., 108 Mo. App. 621; Saller v. Shoe Co., 130 Mo. App. 712; Dowling v. Allen, 74 Mo. 13; Deeds v. Railroad, 157 Mo. App. 463; Warnke v. Rope Co., 171 S. W. 643, 186 Mo. App. 30.] And the further rule that a minor is not guilty of contributory negligence if he exercise the degree of care reasonably to be expected of a person of his age, experience and capacity. [Burger v. Railroad, 112 Mo. 238; Jackson v. Butler, 249 Mo. 342; Henderson v. Kansas City, 177 Mo. 477.]

No inference may be indulged as a matter of law that a boy eighteen or nineteen years of age and shown by the evidence to be of ordinary intelligence and capacity for one of his years should be held to the full accountability of an adult. [Dowling v. Allen, supra.] Cases cited by defendant where the instructions and warnings given by the master have been held sufficient in law, or where the minor servant has been pronounced guilty in law of contributory negligence deal with instances where the risk indisputably was of a nature to be within the knowledge and appreciation of a person of the age and capacity of the plaintiff or where his act which contributed to the injury was clearly beyond

the pale of the degree of care to be expected of a person in his situation and of his age and apparent capacity. [Nugent v. Milling Co., 131 Mo. 241; Smith v. Box Co., 193 Mo. 715; Herdt v. Koenig, 137 Mo. App. 589; Hirsch v. Bread Co., 150 Mo. App. 171; Stegman v. Gerber, 146 Mo. App. 104; Battles v. Railway, 178 Mo. App. 596.] Applying these rules to the facts of the present case we conclude that although it appears the lack of particular instructions and warnings, and the giving of improper instructions relating to the use of treadles, of which plaintiff complains, were matters of which an inexperienced adult in his situation would have had an equal right to complain, the fact of plaintiff's minority was an element of the duty defendant owed plaintiff and it was for the jury to decide to what extent that element should have been recognized in defendant's instructions and warnings, and certainly it was for the jury to consider this element in the solution of the issues of contributory negligence to which we shall hereafter refer.

The evidence of plaintiff clearly establishes negligence of defendant in not giving him necesary instructions in the proper method of operating the machine, in giving him improper directions about using the treadles, and in not warning him of the dangers of an improper operation of the machine. The jury were entitled to infer that defendant was negligent in not telling him how to meet the situation created by a shoe fitting the last too closely, of the likelihood and danger of inadvertently pressing the wrong treadle and of the danger of losing his proper balance if he used only the right foot and stood, as he did, directly in front of the right treadle, instead of standing in front of the space between the two. Plaintiff had no knowledge of these important things and his attempt to press the left treadle from an improper position, coupled with his effort to remove the shoe from the right last, is

shown by his evidence to have been the proximate cause of his injury.

We cannot say, as a matter of law, that he was guilty of contributory negligence. While the machine did not move rapidly and he had ample time to remove his hand, it was natural for him to be surprised and disconcerted by the unexpected slip of his foot and not to realize what was happening before his hand was caught. Nor was he negligent in law for standing before the right treadle in view of his lack of proper instruction and of knowledge of the greater risk of such position, nor of continuing the operation of the machine in view of the fact that by pressing the left treadle the right form and last thereby would be stopped and prevented from coming together. His conduct was an issue of fact for the jury to determine and was correctly submitted in the instructions. The demurrer to the evidence was properly overruled.

We have examined the rulings on the admission of evidence criticised by defendant and find the objections not well taken. And the instructions are found to be free from prejudicial error, except in one important respect. Plaintiff's fourth instruction should not have been given. It submitted to the jury the question, raised in the petition, of negligence in failing to instruct plaintiff in the use of the brake and of whether or not such negligence was the proximate cause of the injury.

Plaintiff's own account of his injury demonstrates beyond question that the absence of instructions relating to the use of the brake, or clutch, could not have been a proximate cause. If he had an opportunity of stopping the machine by moving the brake, thereby preventing the coming together of the last and form, he had a better opportunity of doing the quicker thing —of moving his thumb out of the way. If, knowing the parts were meeting, he voluntarily kept his thumb in a place where it would be mashed, he was guilty of negligence. His position on the issue of contribu-

tory negligence is and must be that he was deprived of a reasonable opportunity to avoid the injury by the sudden and unexpected movement of the right pair and on this hypothesis, which is the only one that will permit him to recover, he had no chance, either to withdraw his hand from the shoe, or to do the additional act of seizing the brake handle with the same hand. For the error of submitting these false issues of negligence and proximate cause, the judgment is reversed and the cause remanded.

All concur.