THE STATE ex rel. MISSOURI PUBLIC UTILITIES
    COMPANY v. ARGUS COX et al., Judges of Springfield Court of Appeals.

Division Two, April 9, 1923.

1. **CERTIORARI: Evidentiary Facts.** In reviewing by *certiorari* an opinion of the court of appeals the Supreme Court may only inspect the evidentiary facts found in said opinion to ascertain if its rulings conflict with the last rulings of this court on the subject.

2. **NEGLIGENCE: Presumption of Due Care.** Where there is no testimony showing the conduct of the deceased employee at the time of his injury, the presumption is that he was in the exercise of due care; but it must also be presumed that the employer was likewise in the exercise of due care, in the absence of any showing to the contrary; and the one presumption rebuts and neutralizes the other; and being thus neutralized, a judgment for the deceased employee's administrator cannot be permitted to stand upon the mere presumption that he was at the time of his injury in the exercise of due care, in the absence of any evidence tending to show that his injuries were due to defendant's negligence.

3. ——: ——: **Inference Upon Inference.** Where the evidence demonstrates that defendant's liability is built on presumption or inference dependent upon other presumption or inference, and

therefore founded on mere conjecture, a judgment for plaintiff cannot stand.

4. ———: ———: ———: Res Ipsa Loquitur. Before the doctrine of *res ipsa loquitur* can be applied there must be some fact, other than the mere fact of injury, from which the negligence of defendant can reasonably be inferred.

5. ———: ———: Inference Upon Inference: Res Ipsa Loquitur. The negligence charged is that the defendant negligently and carelessly permitted electricity to escape from its wires onto the farm upon which deceased was working, and plaintiff relies upon the doctrine of *res ipsa loquitur* for proof of the negligence. The defendant maintained on the farm high-tensioned electric wires, and had taken all proper precaution for their insulation, which was the only precaution that could be taken; these wires were carried from the public road onto the farm upon poles to within twenty-five or thirty feet of a pump, and then, brought down to transformers, which sat on the ground, and the wires running out from the transformers to the pump carried a voltage of 2300 volts; around the transformers were built a picket fence or stockade, seven feet high and securely tight, and the wires were brought down to the transformers from a pole in such a manner that in order for a person to come in contact with them he would have to lean through the fence and take hold of them from the outside; deceased's duties were to work on the farm, and to go to the pump house and switch on and off the electricity, which was a simple duty, and did not require him to come in contact with the high-tensioned wires; he was found dead, prostrate on the ground outside the stockade, his feet eighteen to twenty inches from the picket fence; near his right hand was a detached wire three or four feet long and covered with some sort of insulation, and a burn on his foot showed he had been electrocuted. Leading down from a pole, set a short distance from the picket fence, was a guy wire, which came down between two of the high-powered electric wires, and anchored in the ground; this guy wire was about nine feet from where deceased's body was found; it was loose, or slack, so slack that it could be pushed either way and brought in contact with the two high-tensioned wires between which it ran, or the wind would bring it in contact with them; those two wires were eleven or twelve feet immediately above the place where he lay, and there is evidence that a short time after deceased's death a horse, while grazing, was seen to walk under this guy wire and receive a shock. *Held*, that no fact of negligence was shown authorizing the application of the doctrine of *res ipsa loquitur*, and to sustain a judgment for plaintiff would be to build inference upon inference, for it would be to infer, first, that the guy wire came in contact with one of the two

heavily-charged wires, and next that the guy wire was thereby charged with electricity, and, third, that he touched the thus-charged guy wire with the detached wire held in his hand.

## *Certiorari.*

Transferred from Springfield Court of Appeals.

Opinion quashed.

*Sheppard & Sheppard* for relator.

(1) Respondents' opinion holding that the testimony set out in their opinion on rehearing was admissible is in conflict with the following authorities of this court: Koons v. Railroad Co., 65 Mo. 592; Gutridge v. Railroad Co., 94 Mo. 468; King v. Railroad Co., 98 Mo. 235; Brown v. Road Co., 89 Mo. 155. (2) In holding that the doctrine of *res ipsa loquitur* applied to the facts in evidence herein, respondents' opinion failed to follow the controlling decisions of this court on that question, to-wit: Pointer v. Mountain Ry. Const. Co., 269 Mo. 104; McGrath v. Transit Co., 197 Mo. 104; Removich v. Const. Co., 264 Mo. 43. (3) Relator says that there is nothing in this record showing it to be guilty of any negligence whatever; but to the contrary the undisputed proof and the physical facts—in truth, the very facts which raise the presumption that Fred H. Book met death by electricity, conducted through the loose wire found near his hand—show conclusively that he was killed through his own negligence solely. So that, even though *res ipsa loquitur* is held applicable, the presumption thereby created is overthrown by the facts in this case; and respondents' opinion to the contrary is in conflict with the following controlling decisions of this court: Guthrie v. Holmes, 272 Mo. 215; Mockowik v. Railroad, 196 Mo. 571; McKenna v. Lynch, 233 S. W. 175; Stack v. General Baking Powder Co., 223 S. W. 97. (4) The cause of Book's death was wholly speculative and conjectural; and in holding otherwise, respondents contravened the following decisions of this court: Root v. Ry. Co., 195 Mo. 367; Warner v. Ry. Co., 178 Mo. 134. (5) In their

opinions herein respondents have builded inference upon inference, and presumption upon presumption, in arriving at the conclusion reached by them. In so doing they have run squarely counter to the following controlling decisions of this court on that proposition: Hays v. Hogan, 273 Mo. 25; Hamilton v. Ry. Co., 250 Mo. 722; Swearingen v. Ry. Co., 221 Mo., 659; State v. Lackland, 136 Mo. 33; Yarnell v. Ry. Co., 113 Mo. 579.

DAVIS, C.—The opinion of the Springfield Court of Appeals is reported as Book v. Missouri Public Utilities Co., 242 S. W. 433.

Suit for negligently permitting electricity to escape from wires, causing the death of Fred H. Book. In the court below, verdict and judgment for plaintiff administratrix for $5000. Judgment affirmed. Relator asks us to quash the record of the Court of Appeals for that its opinion disregards the latest rulings of this court.

Relator maintains, among other contentions, that the opinion of the Court of Appeals contravenes the last previous rulings of this court, on the subject, found in Hays v. Hogan, 273 Mo. l. c. 25, 200 S. W. 292; Hamilton v. Railroad, 250 Mo. l. c. 722, 157 S. W. 622; Swearingen v. Railroad, 221 Mo. l. c. 659, 120 S. W. 773; State v. Lackland, 136 Mo. l. c. 33, and Yarnell v. Railroad, 113 Mo. 579, for that plaintiff's recovery depends on combined presumptions.

In the Yarnell Case, Yarnell was found dead at the end of the depot platform, having been decapitated, it would seem, by the cars. The court found the record utterly barren of any testimony showing or tending to show how or in what way Yarnell came to his unfortuate death. The court was asked to presume that Yarnell was in the exercise of due care, and defendant was negligent. Held: "Not allowable to build one presumption on another, and thus make a cause of action."

In the Lackland Case, defendant was charged with stealing hogs. Ford never saw the hogs which defendant sold and no witness identified them as Ford's hogs.

The jury were asked to erect presumptions of guilt and ownership. Held, that "one presumption cannot stand as a postulate and the other as an inference therefrom."

In the Swearingen Case, the deceased was last seen on the engine. In order to reach a car from which plaintiff contended deceased was knocked, by striking an iron post at the side of the track, while standing on a ladder examining a hot box, deceased would have had to walk over about ten cars. There was no evidence that the car was equipped with a side ladder, that deceased was struck by the post or how he met his death. Held, that it was sought to recover by building one presumption on another.

In the Hamilton Case, the body of deceased was found on the morning after two trains had traversed the track he was last seen to be walking on. Hence, it is legitimately inferable that he was struck by the train, but it was not legitimately inferable from any fact proven that he was seen or seeable on the track in a position of peril and at a distance sufficient to permit the stoppage of the train. Held, that it would be resting a second inference on a first inference.

In Hays v. Hogan, the father maintained and gave his son the use of an automobile whenever requested. Without obtaining consent, the son, on his own pleasure bent, in the use of it injured a public highway traveler. The court refused to build inferences that the son was the agent of his father and that the agent was acting within the scope of his authority.

In reviewing, by *certiorari,* the opinion of the Court of Appeals, we may only inspect the evidentiary facts found therein to ascertain if its ruling conflicts with the latest rulings of this court on the subject. [State ex rel. v. Reynolds, 272 Mo. 588, l. c. 596; Ex parte Dick v. Ellison, 287 Mo. 139.]

The plaintiff pleaded general negligence, relying on the doctrine *res ipsa loquitur.* The Court of Appeals held the doctrine applicable to the facts.

The facts as related by it demonstrates: There were no eye witnesses to the tragedy. Deceased was found

dead prostrate on the ground, his feet about eighteen inches north of the north line of the stockade, and about twenty inches east of the west line, and immediately under the nearest high-tensioned wire. If he had been standing, his head would have been five and one-half to six feet from said wire. The stockade, about thirteen feet square, was inclosed by a picket fence about seven feet high, with no entrance. It housed transformers, which sat on the ground, to which, on poles, high-tensioned electric wires, twenty feet high and fastened to insulators, brought 23,000 volts, and when reduced to 2,300 volts by the transformers, were used to operate the farm pump. The Court of Appeals found that all proper precaution had been taken in isolating the high-tensioned wires, and that the wires leading from the transformers to the pump used were carried at a reasonably safe disance above head. There was a burn in the palm of deceased's right hand, caused, it may be inferred, by a detached wire, some three or four feet long, found on the ground near his extended hand; and a burn on his foot or big toe, from which it may be deduced that electricity caused his death. Defendant owned and controlled the electric force in proximity to which deceased was found.

I. Leading from one of defendant's poles between two high-powered electric wires and anchored in the ground was a guy wire about nine feet from which the dead body of deceased was found. The opinion of the Court of Appeals states that: "The only explanation as to how he came in contact with it (the electricity) that can be thought of is that it escaped down this guy wire, or that plaintiff's husband purposely and voluntarily and negligently, if you please, reached through the picket fence pen, and touched the high-powered wire with the wire which was found near his hand after his death."

The Court of Appeals finds some substantial evidence, they say, that he touched the guy wire, and that the guy wire was charged with electricity. They base their findings on the major premise that where there is no testimony whatever showing the conduct of the deceased at

the time of the injury, the law presumes that he conducted himself with due care. We submit to the presumption as correct. [Buesching v. St. Louis Gaslight Co., 73 Mo. 219, 1. c. 233.] But we must also presume that defendant was in the exercise of due care. As is said in the Yarnell Case, 113 Mo. 1. c. 579, the one presumption rebuts and neutralizes the other, like the conjunction of an *acid* and *alkali*.

The Court of Appeals say there is evidence in this case, which they say they have quoted, which shows that the guy wire maintained by it and in close proximity to which plaintiff's husband was found dead, was shown to have been so placed as to have permitted its electricity to escape through such guy wire and thus become dangerous to those who might be passing around or near it. The only evidence that approximates that from which they say they quote is that the guy wire was so loose and slack that it could be pushed in either direction in contact with the two high-tensioned wires, or could be blown to contact with them by the wind; and that after the deceased died, a horse, while grazing, was seen to walk under this guy wire and receive a shock.

Loath as we are to differ with the learned court, we do not think that the above testimony rises to the dignity of evidence. There is no testimony that the guy wire actually came in contact with one of the two high-tensioned wires, or that it was blown to contact. The circumstances and conditions under which the horse received the shock were not shown. Without evidence that the conditions were the same, we may not assume that they were. In order to assume that the guy wire was charged with electricity at the time of the death of deceased, it is necessary to infer that it was pushed to contact with the two high-tensioned wires or blown to such contact by the wind.

Interpreting the evidence in the case at bar, we have no circumstantial fact in evidence, from which to draw the conclusion, that the guy wire, at the time of the demise, was charged with electricity. To hold defendant

298 Mo.—28

guilty of negligence, we must also presume that deceased was in the exercise of due care, that he touched the guy wire and that the guy wire was pushed or blown to contact with the two high-tensioned wires. While these presumptions are vital to plaintiff's recovery, still they may not be used to hold defendant responsible, for they are merely presumptions builded together. There is no evidence in the record, positive or circumstantial, that the things, just above mentioned, happened. We have held in many cases that a presumption may not be based on a presumption so as to permit a recovery.

As the doctrine of *res ipsa loquitur* lies on the foundation of negligence, there must be some fact from which negligence may arise. As was said in Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S. W. 805: ''The mere fact that the plaintiff was injured is not of itself evidence of defendant's negligence. Nor will the mere fact of injury without other facts authorize the application of the rule of presumptive negligence as such rule is recognized by the doctrine *res ipsa loquitur*. Before the rule *res ipsa loquitur* can be invoked there must be shown facts, other than of the mere fact of injury to plaintiff, from which the negligence of defendant can be reasonably inferred.'' That the deceased was found dead, killed by electricity, is not sufficient to charge defendant with negligence. It may be that deceased touched the guy wire, but that it was not charged with electricity. If he touched it, and it was not so charged, defendant is not liable. So far as the evidence makes manifest, defendant may not be charged with negligence relative to the seven-foot fence enclosing the transformers or the wires within, or relative to the high-tensioned wires, immediately and about eleven and one-half or twelve feet above the place where deceased was found, and which it was possible for deceased to have touched with the detached wire. The record fails to reveal the particular thing that electrocuted deceased. Who knows? We may speculate that deceased touched the guy wire and that it was alive, but no tangible evidence is produced from which we may, by logical or

sound reasoning, reach a conclusion, that he both came in contact with the guy wire and that it was charged. To hold otherwise, it would be necessary to contravene and disregard a well settled and sound rule of law.

As the evidence demonstrates that defendant's liability was builded on presumptions or inferences, dependent on other presumptions or inferences, and was therefore founded on mere conjecture, the opinion of the Springfield Court of Appeals contravenes the decisions of this court heretofore mentioned, and the record and judgment of that court is quashed. *Higbee, C.,* concurs; *Railey, .C.,* not sitting.

PER CURIAM:—The foregoing opinion of DAVIS, C., is hereby adopted as the opinion of the court: All of the judges concur.