Ralph DAVIDSON, a minor, by his next friend, Laura Davidson, Appellant,

v.

Wayne HENNEGIN and Margaret Hennegin, Respondents.

No. 46032.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1957.

Harold M. Hull, Frank H. Strong, Hull & Strong, Maryville, for appellant.

Gene Thompson, James P. Dalton, Maryville, for respondents.

BOHLING, Commissioner.

Ralph Davidson, by his next friend, Laura Davidson, appeals from a judgment entered upon sustaining a motion for a directed verdict at the close of plaintiff's case in an action against Wayne Hennegin and Margaret Hennegin for $10,000 damages for personal injuries.

Plaintiff's is the only testimony as to the facts of the occurrence. He is the nephew of Wayne and Margaret Hennegin, husband and wife, the defendants, his mother being Mr. Hennegin's sister. The Davidson and Hennegin families exchanged farm labor. Plaintiff was injured about 5:30 p. m., June 19, 1953. Plaintiff, his brother Allen, Charles Scott, Charles Frump, Marvin Lake, and defendants (Mr. and Mrs. Hennegin) were putting up loose clover hay in the loft of the Hennegin barn under the supervision of Mr. Hennegin. The barn is about 125 yards from the Hennegin house and is 30 or 35 feet east and west by 40 or 45 feet north and south in size. The hay door is on the east side of the barn. Plaintiff stated it was close to 20 feet to the bot-

tom of the door. Mrs. Hennegin, on the west side of the barn and between it and the house, "was driving the hay horses that day." The team was hitched to the hay rope to pull up the hay fork. Plaintiff was 17 years old at the time of his injury. He had a high school education and had lived on a farm all of his life. His occupation was general farming. His father, Dale Davidson, operated a 300-acre farm; was 67 years old; had a heart condition; "wasn't able to do any heavy farm work"; and the operation of the 300 acres was left principally to plaintiff, the only child living at home.

Plaintiff was operating a tractor, hauling the hay. Mr. Hennegin and Marvin Lake were in the loft placing the hay. The hay had been unloaded from plaintiff's wagon with the hay fork and, as usual, there was some hay on the ground. He cleaned the hay from the wagon. About that time "a little shower came up." Mrs. Hennegin came around to the east side of the barn and, talking to plaintiff, "said she was going to the house to put down the windows, so I asked her if she would roll up the windows on my Dad's car." Plaintiff then "bunched up the hay," got hold of the hay fork, and started pulling the carrier back. The track was a little uneven or rough, and when he got it back to the stop block it "was going a little too fast, and I knocked the stop block off. The carrier went back to its normal place and dropped the pulley that the hay fork is on, and the hay fork came down to the ground." They had to repair the track before they could finish putting up the hay. A ladder used for climbing up on the hay rack was on the ground and was needed in the barn to fix the track.

Plaintiff testified: "Uncle Wayne wanted me to tie the rope to the ladder so that he could get the ladder in the barn and repair it, and I tied the rope through the ladder at this time, and I went out to get the clevis. It was laying there by—

"Q. (Interrupting) Did he say anything to you about the clevis at all? A. Well,

he wanted me to hand the clevis up to him or throw it up to him.

"Q. What, specifically, if anything, did he say about the clevis? A. Well—

"Q. If you don't remember, just say you don't know. A. I don't remember."

Plaintiff testified that after he tied the rope to the top rung of the ladder he "set the ladder up against the barn and got the clevis"; that getting the clevis "was a matter of a few seconds"; that he started up the ladder about four or five minutes after Mrs. Hennegin talked to him; that he "got the clevis and started right up" the ladder, intending to "throw" the clevis to Mr. Hennegin; that when he got up three or four rounds on the ladder it shot up into the air, hit the roof of the barn, and broke the top round of the ladder; that he fell off the ladder and landed on his left leg and his hips, and the ladder fell to the ground.

Plaintiff's injury resulted in his having what laymen know as a "trick knee," and later an operation was performed on the knee. He continued to work that afternoon for about an hour and a half longer, but had a great deal of pain.

Asked whether Mr. Hennegin "could see you at all times," plaintiff answered: "Yes, Uncle Wayne and Marvin Lake was present, so they could see me at all times."

Plaintiff testified Mr. Hennegin remained in the barn loft.

He did not know whether Mrs. Hennegin went to the house.

There were doors on each side of the barn. Plaintiff testified: "Q. Could you see the team, whether it was attended or anyone was standing by it, from where you were standing? A. No, no"; and that the team had been there several years and a "gentle farm team is what they were."

Plaintiff's petition charged common law negligence; charging: (1) That defendants negligently directed, permitted and caused a seventeen year old farm boy to

attach a ladder to a hay rope and to climb upon said ladder when so attached to said hay rope at a time when defendants knew, or should have known, that horses were hitched to the opposite end of said hay rope and were unattended; and (2) that defendants negligently failed to warn plaintiff that getting on said ladder was dangerous because said horses were attached to said hay rope and were unattended.

■ A plaintiff is entitled to the most favorable view of the probative evidence and all reasonable inferences therefrom in ruling a defendant's motion for a directed verdict. Lowry v. Mohn, Mo., 195 S.W.2d 652, 654 [1]; Hockaday v. Panhandle Eastern Pipe Line Co., Mo.App., 66 S.W.2d 956, 958 [1]. Plaintiff, however, must adduce substantial evidence. A mere scintilla of evidence is insufficient. Williams v. Kansas City So. R. Co., 257 Mo. 87, 116, 165 S.W. 783, 796, 52 L.R.A.,N.S., 443; Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167, 170 [3]. Forced and violent inferences should not be indulged. Williams v. Kansas City So. R. Co., supra, loc. cit. 112 and 794 [1], respectively.

Plaintiff makes the point that negligence may be inferred against Mrs. Hennegin because she left a team of horses hitched to a hay rope unattended and untied in a little shower, citing 2 Am.Jur. 748, § 73, and 759, § 90; and Hockaday v. Panhandle Eastern Pipe Line Co., Mo.App., 66 S.W.2d 956, 959.

■■ Plaintiff states that the jury might have known exactly what happened had defendants been given an opportunity to present testimony. Plaintiff had the burden of proving the specific negligence charged at the trial; and has the burden of establishing error upon his appeal. State to Use of Consolidated School Dist. No. 42 of Scott County v. Powell, 359 Mo. 321, 221 S.W.2d 508, 511 [7]; Ringeisen v. City of St. Louis, Mo.App., 238 S.W.2d 57, 64 [4, 5]. It is presumed that a defendant exercised due care in the absence of substantial evidence establishing negligence. State ex rel. Missouri Public Utilities Co. v. Cox, 298 Mo. 427, 250 S.W. 551, 552 [2].

There is no direct evidence that Mrs. Hennegin left the team unattended or untied. Plaintiff concedes this. Plaintiff's general statement that Mrs. Hennegin was "driving that day" did not establish that someone else was not driving while she went to close the windows. Plaintiff says the little shower and the flies would make a gentle team seek shelter. He says that Mrs. Hennegin may have actually driven the team and caused the accident. Plaintiff has presented possibilities as to what might have happened to the team. Other possibilities of equal standing may as readily be drawn from the testimony. It might be said that the team was frightened and moved through no fault of anyone or through no fault of its driver, or was moved by one of the other persons assisting in putting up the hay, a fellow servant, under conditions imposing no liability on defendants.

■ In cases where the evidence tends to support equally either of several inconsistent inferences, some of which result in a failure of proof of defendant's actionable negligence, the factual issue or issues essential to plaintiff's case may not be said to be established by legitimate proof as plaintiff has failed to remove the case from the realm of speculation and conjecture. Grindstaff v. J. Goldberg & Sons S. S. Co., 328 Mo. 72, 80, 40 S.W.2d 702, 705 [8]; Panke v. Shannon, 357 Mo. 1195, 212 S.W.2d 792, 794; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33 [4]; State ex rel. Dutcher v. Shelton, 249 Mo. 660, 696 (III), 156 S.W. 955, 965 [2]; Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167, 170 [3].

Plaintiff's case of Hockaday v. Panhandle Eastern Pipe Line Co., supra, was an action against the named defendant and its construction contractor. Someone, driving a truck, entered and left a feed lot in which some hogs were kept without closing the gate. The truck on the return trip was

loaded with welding bottles and gas tanks used by defendants in construction work beyond a rise on the premises. Prior to the truck's return trip a large hog was seen to leave the feed lot, cross the road, and enter a cornfield where plaintiff was plowing with a team. After the truck had departed a large hog coming through the corn frightened the team, caused it to run away and injure plaintiff. The court held that there was sufficient evidence for an inference as to the identity of the hog causing the injury, but that plaintiff had failed to make a submissible case against defendants, there being no evidence as to the identity of the truck or its driver or his employer or for whom the bottles and tanks were being removed.

■ Plaintiff says he had a right to assume the team would be attended or tied to prevent its running off, or would be unhitched from the hay rope. Similar assumptions might exist in given circumstances with respect to a runaway team on a public street; and such is the effect of plaintiff's references to 2 Am.Jur. 748, § 73, and 759, § 90. The same authority states that it is not negligence to leave a horse unattended on a street if due care is used in tying it securely, and that leaving a team standing in a private lane of itself does not imply negligence. 2 Am.Jur. 749, § 74, nn. 14, 2. There is no direct testimony that the instant team was unattended or if unattended was untied. There is no testimony that this team ever ran away or became frightened or was even restless. The team was in its barn lot, not on a street. Plaintiff's authorities do not establish error in the circumstances of the instant record.

Mrs. Hennegin was not actionably negligent for an additional reason. Plaintiff says she should have anticipated the team would run away because of the rain if untied. Plaintiff estimated that four or five minutes elapsed between his asking Mrs. Hennegin to close his car windows and his starting up the ladder.

Negligence "presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent. A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge or reasonably was chargeable with knowledge that the act or omission involved danger to another." 38 Am.Jur. 665, § 23, nn. 1, 2. And: "Generally speaking, no one is bound to guard against or take measures to avert that which, under the circumstances, a reasonably prudent person would not anticipate as likely to happen." Id., p. 669, § 24, n. 16.

Had plaintiff not knocked the stop block off the track, caused the hay fork to fall to the ground, and mounted the ladder after Mrs. Hennegin's departure, he would have been in no danger. There is not a scintilla of evidence in this record that Mrs. Hennegin knew or should have known of these acts of plaintiff. Under the exceptional circumstances of record Mrs. Hennegin could not reasonably have anticipated plaintiff's actions and is not chargeable with actionable negligence. Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167, 171 [8-14]; Lawson v. Higgins, 350 Mo. 1066, 169 S.W. 2d 881, 883 [8-10]; Robinson v. Great Atl. & Pac. Tea Co., 347 Mo. 421, 147 S.W.2d 648; Clayton v. May Department Stores Co., Mo.App., 184 S.W.2d 735, 738 [2-5].

Plaintiff says Mr. Hennegin was negligent in failing to provide a safe method of work in that while supervising plaintiff in procuring the ladder and clevis for him and knowing Mrs. Hennegin had left the team unattended and untied while hitched tô the hay rope, he watched and permitted plaintiff to climb on the ladder.

Bulson v. International Shoe Co., 191 Mo.App. 128, 177 S.W. 1084, 1086, is the only case cited by plaintiff to the point. The defendant in that case was held liable for an injury sustained by an inexperienced 18 year old boy on the second day of his operation of a ponderous and complicated

machine but comparatively simple in operation for negligence in failing to give such instructions and warnings of danger to which an inexperienced adult operator would have been entitled upon being employed upon dangerous work. Plaintiff clearly established defendant's negligence by direct evidence in failing to give necessary instructions in the proper method of operating the machine, in giving improper directions about using its treadles, and in not warning of dangers of an improper operation, including the risk of handling tight fitting shoes and how to avoid it, which factor occasioned plaintiff's injury.

Plaintiff, although only 17 years of age, was engaged in general farming and had the principal burdens of operating his father's 300 acre farm. His testimony does not place him in the class of an inexperienced youth performing dangerous work requiring instructions for the operation of a machine and warnings for the protection of inexperienced adult operators as in the Bulson and other like cases.

The facts of record do not bear out the statements in plaintiff's point. There is no evidence that when Mrs. Hennegin and plaintiff talked about closing the windows that Mr. Hennegin, who was in the barn loft, heard the conversation, and that he knew his wife was going to the house, which was on the opposite side of the barn from where plaintiff and he were working. Under the record made plaintiff knew more of the situation than did Mr. Hennegin. Whether Mr. Hennegin wanted plaintiff to tie the hay rope or the trip rope to the ladder, this request to tie a rope to the ladder was the only direction to plaintiff to have anything to do with the ladder. Plaintiff also stated Mr. Hennegin wanted him to hand or throw the clevis up to him, but testified, when pressed by his counsel, he did not remember what Mr. Hennegin said about the clevis. Plaintiff's injury resulted from his voluntarily getting on the ladder

to "throw" the clevis to Mr. Hennegin. He could have thrown the clevis through the open door of the barn loft from the ground with safety and should have selected the safe way under plaintiff's Bulson case, supra, 177 S.W. 1084 [6]. See Gilbert v. Hilliard, Mo.App., 187 S.W. 594, 596 [2, 3], where the master directed the servant to get upon a wagon and the servant was injured because he chose to stand rather than sit on a load of shingles. The instant plaintiff was not directed to get on the ladder. There is no testimony to sustain plaintiff's assertion that Mr. Hennegin watched and permitted plaintiff to climb on the ladder. Plaintiff's testimony was that Mr. Hennegin was in the barn loft and "could see him." This was not a statement that he did see plaintiff getting on the ladder. The case involves animate objects, changing conditions, and a transitory danger arising from plaintiff mounting the ladder. So far as the record discloses Mr. Hennegin was not charged with knowledge, actual or constructive, that plaintiff was going upon the ladder and had no occasion to warn him. Moreover, much of what was said in discussing the liability of Mrs. Hennegin is applicable to Mr. Hennegin, particularly that plaintiff's basic issue of negligence in leaving this team unattended was not removed from speculation and conjecture.

Plaintiff has failed to establish reversible error.

The judgment is affirmed.

BARRETT, C., concurs in the result.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.