James T. MOLES, Respondent,

v.

KANSAS CITY STOCK YARDS COMPANY OF MAINE, Appellant.

No. 24868.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1968.

Application to Transfer Denied Jan. 13, 1969.

Leonard A. O'Neal, Ray Sandy Sutton, Kansas City, for appellant; Brenner, Lockwood & O'Neal, Kansas City, of counsel.

Donald E. Raymond, H. George Lafferty, Kansas City, for respondent.

MORGAN, Judge.

Plaintiff obtained a judgment in the sum of $5,000.00 for personal injuries suffered in an accident while employed by defendant. Defendant has appealed.

The defendant, Kansas City Stock Yards Company Of Maine, operates a stockyard to receive and hold cattle shipped to market. Its offices are located in Kansas City, Missouri, but the yards adjacent thereto extend into Kansas. The accident in question occurred in that part of the yards located in Wyandotte County, Kansas. Defendant has 130 employees actively engaged in operating the yards, but since 1927 has continued to reject the provisions of the Missouri Workmen's Compensation Act, Chapter 287, V.A.M.S. Plaintiff was employed at defendant's Missouri office in 1959 and was so engaged on the date of the accident on April 14, 1964. His duties classified him as a "feed man."

As we pass on the questions before us, plaintiff, as the prevailing party, is entitled to have the evidence, including all favorable inferences therefrom, considered in the light most favorable to him, and to have defendant's evidence disregarded un-

less it aids plaintiff's case. Herr v. Ruprecht, Mo., 331 S.W.2d 642, 645; Poage v. Parker, Mo.App., 343 S.W.2d 203, 205; Stevens v. Waldman, Mo.App., 375 S.W.2d 633.

The facts are relatively simple. The yards were divided by fences into many separate pens. At various intervals there were hay racks on top of the fencing. At the scene of the accident, the fence was approximately five feet six inches high and was topped with two 2 x 6 boards to form a walkway from the front edge of the pen to the hay rack at the rear. On this date plaintiff and a fellow employee named McGee were assigned to unload bales of hay into the hay racks from a horse drawn wagon. The bed of the wagon was approximately three feet eight inches high or one foot ten inches below the fence walkway. The wagon was about six feet wide and ten feet long. It weighed 1400 pounds and had four rubber tired wheels. It was constructed with a tongue similar to a "fifth wheel" for short turns. It was not equipped with any braking device. The wagon was pulled by one horse, in this instance named "Pat," that was harnessed between two shafts by tugs and breeching. Such harness allowed the horse to move the wagon either forward or backward. Two men were used to unload baled hay from the wagon to the feed racks. During the time of interest here, plaintiff at each stop would step up from the wagon to the walkway on the fence and stack the bales in the racks as they were passed to him by McGee. It is agreed that the man on the wagon, McGee, had the duty of controlling the horse. After the unloading process was completed, at the time in question, plaintiff started to step down from the fence to the wagon. At this moment the wagon was stationary. After he started to step down, the wagon moved forward. One of plaintiff's feet hit the extreme rear edge of the wagon bed and he fell to the brick pavement. No claim is made that the verdict is excessive and we need not consider the evidence relating to plaintiff's injuries.

The parties agree the law of Kansas controls the substantive rights of the parties, and the law of the forum, Missouri, determines the quantum of proof necessary to establish a case. Wright v. Kansas City Structural Steel Co., 236 Mo.App. 872, 157 S.W.2d 582; Mo.Dig., Negligence, ☞103½. However, in this master and servant case, such rules create no confusion as the courts of both states have declared that a master is not liable to the servant for personal injuries sustained in the course of the servant's employment unless the master was negligent, and that such negligence was the direct and proximate cause of the injury. Stated otherwise, a master is not an insurer against injuries which a servant may incur in the discharge of his duties. Clymer v. Tennison, Mo.App., 384 S.W.2d 829; Davidson v. Hennegin, Mo., 304 S.W.2d 836; Blackmore v. Auer et al., 187 Kan. 434, 357 P.2d 765; Uhlrig v. Shortt, 194 Kan. 68, 397 P.2d 321; 35 Am.Jur., Master and Servant, Section 121, p. 550.

To create liability the master must breach some duty which is owed to the servant. Those duties as declared by the Supreme Court of Kansas are: "A duty rests upon the master not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. These duties are: (1) To provide safe and suitable machinery and appliances for the business, including a safe place to work. This includes the exercise of reasonable care in furnishing such appliances, and the exercise of like care in keeping the same in repair and in making proper inspections and tests. (2) To exercise like care in providing and retaining sufficient and suitable servants for the business, and instructing those who, from newness or age, evidently need it. (3) To establish proper rules and regulations for the service, and, having adopted such, to conform to them." Taylor v. Hostetler, 186 Kan. 788, 352 P.2d 1042, 1049.

Where, as here, the master as employer has rejected the provisions of the

Compensation Act, the actual trial of the issues, created when there is an alleged breach of such duty, is affected specifically by the Act. Section 287.110(2), V.A.M.S., provides: "This chapter shall apply * * * to all injuries received outside of this state under contract of employment made in this state * * *" The particular portion of the chapter, applicable here, is Section 287.080(1), V.A.M.S., which provides: "If * * * any major employer has elected to reject the provisions of this chapter, in any action to recover damages for personal injury or death of his employee in the course of his employment, it shall not be a defense that the same was caused by the *negligence of a fellow servant*, or that the *employee had assumed the risk* of the injury or death, or that the same was caused in any degree by the *negligence of the employee* * * *" (Emphasis added) The ultimate effect of this statute is to make the negligence of the employer, or the absence thereof, the sole and only issue to be determined insofar as liability is concerned.

■ Plaintiff's verdict directing instruction premised a verdict in his favor on two assignments of negligence. They were: (1) Defendant failed to provide a reasonably safe wagon, or (2) Defendant's employee failed to keep the wagon stationary while plaintiff was stepping on it. Defendant contends neither assignment was supported by substantial evidence. If it is right in either instance, the instruction is erroneous; because, being in the disjunctive, it is essential that each of the grounds submitted as a basis of recovery be supported by the evidence. Hartmann v. St. Louis-San Francisco Ry. Co., Mo.App., 280 S.W.2d 442; Hart v. Midkiff, Mo., 321 S.W.2d 500; Switzer v. Switzer, Mo., 373 S.W.2d 930.

■ We look first to the charge that "defendant failed to provide a reasonably safe wagon." Defendant argues: "Though statutes require a motor vehicle to be equipped with two sets of brakes, there is no law that requires a horse-drawn hay wagon to be equipped with two sets of brakes. In the case at bar the harness was the brake. The horse had absolute control over the wagon, and both employees, plaintiff and McGee, had reasonable control over the horse in that the horse was gentle and trained to follow commands." We do not believe the problem can be resolved with such certainty. The obligation of the employer to provide a reasonably safe place to work, as well as suitable appliances, need not be bottomed on some statutory declaration but may be found in any factual situation wherein it reasonably appears that the employer has failed to exercise reasonable care to protect the employee from avoidable perils. The need for some sort of braking device is inferred somewhat from the quoted argument that the harness is a brake. However, this is true only if the horse remains stationary. We do agree with the statement that the horse had absolute control over the wagon, particularly at those times when both employees were engaged in handling hay. The evidence established that even "Pat," as a gentle horse, often moved two or three "grazing" steps without command. Testimony was offered by defendant that the horse could have dragged the 1400 pound wagon with the wheels locked. This may be true, but could not the jury have reasonably decided, after exercising its right to disregard such testimony, that a 1400 pound anchor would have prevented such casual grazing steps or weight shifting movements of the horse, and, in turn, prevented the wagon moving? Neither the absence of extensive evidence nor expert testimony would bar the jury from applying its common sense to such an elementary factual situation. The duties assigned plaintiff required that he step regularly from the fence to the wagon. The latter acted more as a movable platform. It is not suggested that such duties anticipated he catch the wagon on the fly. We are convinced it was within the province of the jury to have found that plaintiff was not provided a reasonably safe place to work. That a similar accident may not have happened before does not prove a

potential hazard did not exist each time plaintiff was required to return to the wagon from the fence. The omission of brakes reasonably could have been found to have been the proximate cause of the accident, particularly in view of the admitted inclination of the horse to graze. We are convinced a submissible case was made on this assignment. However, with the dual submission, we do not know if the jury actually predicated the verdict on such a finding. It might have absolved defendant of negligence on this assignment and found negligence under the second charge.

This charge authorized a verdict if "defendant's employee failed to keep the wagon stationary while plaintiff was stepping on it." We have searched the record to find what or what not McGee might have been doing at the time of the accident. Plaintiff was asked, " * * * what was Mr. McGee doing at the exact moment that you stepped down * * *?" He answered, "I don't know. I was watching my own step." He further testified he did not know what caused the horse to move. The one eye witness, offered by defendant, did observe the accident, but did not notice what McGee was doing at the time. Thus, we do not have the often difficult question of determining if the evidence sufficiently removed the assignment from the realm of speculation and conjecture, but we find a complete lack of evidence to justify the submission of this issue in any event. We might speculate that McGee had abandoned his duty to control the horse and impute such negligence to the employer, but just as easily we could speculate that McGee was exerting every reasonable effort to control the horse. Either inference, and others of which one might conceive, would have to be forced in the absence of any evidence. The situation is not unlike that found in Davidson v. Hennegin, Mo., 304 S.W.2d 836, 839. There, plaintiff was injured while on the fork side of the barn in the long used process of lifting hay into a barn loft. He was injured when the fork was raised by the team on the other side of the barn pulling on the rope. There was no direct evidence to show what caused the team to move. Our Supreme Court denied recovery in holding: "Plaintiff has presented possibilities as to what might have happened to the team. Other possibilities of equal standing may as readily be drawn from the testimony. It might be said that the team was frightened and moved through no fault of any one or through no fault of its driver * * * under conditions imposing no liability on defendants." See also Clymer v. Tennison, Mo.App., 384 S.W. 2d 829. Since the jury actually may have based the verdict on this assignment, which had no evidence to sustain it, we, of necessity, must reverse the judgment.

In passing, we note other evidence that McGee was rough on "Pat" to such an extent it made him nervous each time McGee picked up the reins. However, no attempt was made to show such incompetence, if a fact, was known by defendant. Taylor v. Hostetler, 186 Kan. 788, 352 P.2d l. c. 1051; 35 Am.Jur., Master and Servant, Section 347; 56 C.J.S. Master and Servant § 316, p. 1076. In addition, though tempted by arguments presented by both parties in excellent briefs, we refrain from discussing other points that may or may not arise in a new trial which we feel justice demands in this case.

The judgment is reversed and the cause remanded for a new trial.

All concur.