THE STATE EX REL. CITY OF MACON v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—12 S. W. (2d) 727.

Division One, December 31, 1928.

*George N. Davis* and *John N. Franklin* for relator.

*Matthews & Jones* and *Lacy & Edwards* for respondent.

SEDDON, C.—This is an original proceeding in certiorari, commenced in this court, wherein the relator, the city of Macon, seeks the quashal of the opinion, judgment and record of the Kansas City Court of Appeals in the certain cause, originally commenced in the Circuit Court of Macon County and ruled on appeal by said Court of Appeals, entitled "Albert Downey, Plaintiff and Respondent, v. City of Macon, Defendant and Appellant." The plaintiff in said cause, Albert Downey, recovered a judgment against the city of Macon, a municipal corporation, in the sum of $1000 for personal injuries claimed to have been suffered by plaintiff as the result of an electrical shock, alleged to have been occasioned by the negligence of the said municipal corporation. The judgment *nisi* was affirmed by the Kansas City Court of Appeals, and relator claims that the decision and opinion of said Court of Appeals, affirming said judgment, is in conflict with controlling decisions of this court.

The evidentiary facts in said cause, and the averments of the pleadings upon which the cause was tried and submitted in the circuit court, are thus stated in the opinion of the respondent Court of Appeals:

"The facts of record are that defendant is a city of the third class and, as such, owns and operates a plant for the manufacture and distribution of electricity to consumers through the usual channels and by the use of the usual appliances and attachments for such purposes. At the time of the occurrence which furnishes a basis for this action, plaintiff was a resident of that part of the defendant city which lies west of the Wabash Railroad tracks which run north and south through said city and west of the main business section thereof.

"On October 9, 1926, plaintiff, who was and for some time had been a consumer of the electric product of said city, lived with his wife and small son with his wife's parents, Mr. and Mrs. Steve Hurst, in the home of the latter on the north side of Lakeview or Weed Street and on the west side of Wentz Street. This residence and a private garage on the premises were served with electricity from the electric lines owned and operated by defendant. It is in evidence that at that time there was no other manufacturer or distributor of electricity to the consumers than the city of Macon itself. It also appears that the wiring of the Hurst premises had been done by the plaintiff who had had some experience in such matters, but defendant claims the work was 'extremely crude.'

"The primary wires of defendant carried 2200 to 2300 volts of electricity. Such a wire ran west on Lakeview or Weed Street, from which secondary wires carrying approximately 110 to 115 volts came into the Hurst residence through a meter situated on the porch, on the east side thereof. Using wires from the meter, plaintiff had constructed a line to the barn on the premises and erected a pole some fifteen feet high upon which to convey the same. These wires entering the barn had been scraped by plaintiff and two wires taped onto them which ran into the wooden garage, already mentioned, about twenty to eighty feet distant. Between this garage and the Hurst residence was a milk house into which two wires had been dropped down for a drop light therein. The said line was higher at the pole than where it entered the garage. The line entered the garage through a piece of rubber hose the size of a garden hose.

"It appears that originally the wires had been attached to a socket in the middle and near the front end of the garage and were there fastened to one of the rafters three or four feet from where it entered the building. Afterwards an extension cord about fifteen feet in length was attached to these wires near the point of entrance to the garage. This cord had a brass socket on the end in which a small light bulb was placed for the purpose of furnishing light in working on the automobile, and was capable of being carried from place to place therein within the limits of the length of the said drop cord. It is claimed by defendant that the wire on a portion of this extension cord was 'patched up' and was unfit for such use. The garage in question was rectangular in shape, longer north and south than east and west, and was of sufficient length to accommodate a Ford car, with room to work around it, and with a board bumper at the north end. The garage was built of ship-lap and without lining, and had a concrete footing along the ends and sides and a floor of dirt and cinders. There was a drain around the building on the outside for the purposes of keeping the garage dry during all seasons.

"On October 9, 1926, at about eight o'clock in the morning, as shown by the evidence, plaintiff, wearing a pair of boots with rubber heels and soles of rubber or composition, was standing on the oak plank (which he claims was perfectly dry), near the rear or north end of the garage and, while so standing, he took hold of the said drop cord and received a shock of electricity which knocked him down, rendered him unconscious and severely burned his hands, head and shoulders. His small son was with him at the time and gave the alarm. Plaintiff's father-in-law and mother-in-law, in attempting to extricate him from the wire, received shocks from the charged wire and plaintiff's release therefrom appears not to have been successfully accomplished until plaintiff's wife, by operating the switch at the house, shut off the current of electricity. Plaintiff was

taken into the house, where he was treated by a physician, and did not regain consciousness for some time.

"It is shown by the evidence that the primary wires of the defendant carried a voltage of 2200 to 2300; that through transformers this voltage was reduced 10 to 1, so that the current as it left the transformers was 220 volts; and by 'hooking up' one 220-volt wire with one neutral wire, the current which entered the Hurst house and other houses in the neighborhood was reduced to 110 to 115 volts. There were two of these transformers located a little less than a block from the Hurst house.

"The petition charges negligence as follows:

" 'Plaintiff states that it was the duty of defendant at all times herein mentioned to furnish and deliver to the plaintiff's home a normal current of electricity, which was used and is used for residential and domestic purposes, and the voltage of said current should have been approximately 110 volts, but the defendant, wholly disregarding its duty in that respect, carelessly and negligently furnished and caused to be furnished to the plaintiff, and negligently permitted dangerous, excessive, unusual and deadly current of electricity to traverse the wires running to and into said residence and garage of the plaintiff, and thereby carelessly and negligently caused the plaintiff to receive said severe electrical shock.

" 'Plaintiff further states that the negligence and carelessness of the defendant in permitting and causing such dangerous, excessive and unusual electrical current to traverse the wires running into the plaintiff's residence and garage was the proximate and direct cause of the electrical shock received by the plaintiff, and the injuries resulting directly and solely on that account.'

"Defendant filed a timely motion to make the petition more definite and certain, quoted therein from the petition the charge of negligence above set out, and further quoted therefrom 'that at the time said plaintiff so took hold of said drop cord, the defendant and its servants and agents had carelessly and negligently caused and permitted said drop cord to become and be charged with electricity, electric current and electrical energy in such unusual, unsafe, dangerous and excessive quantities and of such high voltage as to be dangerous and deadly to anyone touching or coming into contact with such drop cord. . . .'

"The motion charges that these averments are too vague, indefinite and uncertain to apprise defendant in what way, if any, plaintiff claims defendant had been negligent, and only charges negligence in general; that the petition does not inform defendant whether it is charged with a negligent act or a negligent failure to perform a duty; because the doctrine of *res ipsa loquitur* does not apply under

the facts set out in the petition. This motion was overruled. Defendant thereupon filed its demurrer to the petition, charging that the petition wholly fails to state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendant filed its answer consisting of a general denial; specifically denying that, at any time mentioned in the petition, it had negligently caused or permitted an electric current of excess voltage to be carried over its wires and into the residence and garage mentioned in the petition; denied that the voltage carried into residences and other buildings and to customers, and especially that carried into the residence mentioned in the petition, is harmless, but, on the contrary avers that the same is dangerous when used in defective and improperly insulated cords and appliances, and that if plaintiff received any injury from an electric shock at the time and place mentioned in the petition, the same was caused and contributed to by the defective and insufficient wiring, equipment, cords and appliances installed on the premises by plaintiff, and by his negligent use of such defective and insufficiently insulated equipment, cords, lamps, lamp socket and other appliances, and by plaintiff's negligent and reckless use thereof.''

Thereupon, the opinion of the Court of Appeals announces the legal conclusions reached by that court, as follows:

''It is charged that the court erred in overruling the demurrer offered at the close of plaintiff's case, because (a) there was no substantial evidence offered tending to show negligence on the part of defendant, and because (b) plaintiff's testimony established the fact that the injury was caused by contributory negligence of plaintiff. In support of these contentions defendant insists there is no evidence, either direct or indirect, circumstantial or otherwise, tending to establish negligence on the part of defendant, and in support of this position relies strongly on the case of Morrow v. Gas Co., 315 Mo. 367, 286 S. W. 106. While the cited case is not on all-fours with this one, yet the facts are sufficiently similar to permit a satisfactory comparison. In the Morrow case, the deceased was found dead in the basement of his home, having burns upon his right hand and wrist, the only reasonable and natural explanation of which was that they had been caused by contact with the electric drop cord, which had been burned in two and part of which was found beside the dead body. As in the case at bar, there was proof that the cord had previously been handled in safety; that the usual and normal current and voltage delivered by defendant to the home of the deceased was approximately 110; that such voltage is not usually dangerous to a normal, healthy person; that deceased was in good health; that neighbors served by the same secondary wires had received shocks when handling electrical fixtures and appliances within their respective homes on the night of deceased's death, or

immediately prior thereto. So far the facts of the two cases run almost parallel. But in the Morrow case there was proof that the primary wire through which the current was furnished had been in contact with the limbs of a tree through which the secondary wires passed. The court held that while there was no direct proof that an excess of voltage had been carried over the secondary wires into deceased's home, yet the proof was such that it was a question for the jury's determination (citing Conner v. Ry. Co., 181 Mo. 397, 81 S. W. 145; Myers v. City, 189 S. W. 1. c. 820; Vessels v. Light & Power Co., 219 S. W. (Mo.) 80, 87; Solomon v. Light & Power Co., 303 Mo. 622, 639, 262 S. W. 367, 372.) . . .

"And so, in the light of the rulings in the cited cases, and especially in the Morrow case, upon which both parties hereto seem to rely, we must hold there was no error in the action of the trial court in overruling defendant's demurrer at the close of plaintiff's case. This ruling also applies with similar force to the order overruling the demurrer at the close of all the evidence; because the testimony in defendant's behalf served only to oppose plaintiff's position in the matter; thus creating a conflict in the evidence for the determination of the jury. . . .

"We find plaintiff's evidence was sufficient to carry the case to the jury and that the demurrer was properly overruled. Moreover, we find the rule of *res ipsa loquitur* to be applicable here, and this ruling applies to defendant's charge that the court erred in refusing to require plaintiff to make his petition more definite and certain. On examination we find the petition to be almost identical with that in the Morrow case, and we hold the opinion in that case to be governing here. The petition stated a cause of action and the evidence in support thereof was sufficiently substantial to take the case to the jury.

"It is charged plaintiff's Instruction No. 1 was erroneous in that it was a commission to the jury to speculate and conjecture and to build presumption upon presumption. We find this charge to be untenable. Defendant argues that the court therein submitted to the jury the question of whether or not defendant negligently caused or permitted an excessive current of electricity to enter into the wires in plaintiff's garage, and that this was error because there was a total failure of proof in this respect. On careful examination we find the instruction follows the allegations in the petition, which we have held to be good, and that it conforms to the proof offered on this point. It may be added that there appears to have been no way for plaintiff to prove directly and positively the amount of voltage that passed through the wires, but, under the evidence, every reasonable inference may be indulged in plaintiff's behalf in this respect, and the court did not err in giving the instruction."

The opinion of respondent Court of Appeals is reported and set out in full in Downey v. City of Macon, 6 S. W. (2d) 63.

I. The opinion of respondents herein clearly discloses that respondents reached the legal conclusion that the rule or doctrine *res ipsa loquitur* is applicable in the present case. Relator claims that the opinion of respondents, in finding and holding the rule *res ipsa loquitur* to be applicable to the case in hand, thereby contravenes the controlling decisions of this court in Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, and Morrow v. Missouri Gas & Electric Service Co., 315 Mo. 367.

If the opinion of respondents is in conflict with a prior decision of this court which has been ruled upon a like or similar state of facts, or which has ruled an identical question of law, or if the opinion of respondents contravenes a prior decision of this court as regards any general principle of law announced by this court, then the opinion, judgment and record of respondents herein must be quashed. [State ex rel. v. Reynolds, 287 Mo. 169; State ex rel. v. Reynolds, 289 Mo. 506; State ex rel. v. Allen, 294 Mo. 214; State ex rel. v. Trimble, 250 S. W. 384.]

As stated by respondents in their opinion, the petition in the present case charges that defendant (relator here) "carelessly and negligently furnished and caused to be furnished to the plaintiff, and negligently permitted dangerous, excessive, unusual and deadly current of electricity to traverse the wires running to and into said residence and garage of the plaintiff, and thereby carelessly and negligently caused the plaintiff to receive said severe electrical shock." In the Kuhlman case, supra, the petition charged that the defendant "negligently permitted and caused current in dangerous and deadly amount to pass over the wires and through the equipment into said home" of the plaintiff. In the Morrow case, supra, the petition charged that the defendant "had carelessly and negligently caused or permitted said drop cord to become and be charged with electric current in such excessive quantities and of such high voltage as to be dangerous to anyone touching, or in manner coming into contact with such drop cord." A comparison of the petition in the present case with the petitions in the Kuhlman and Morrow cases, respectively, discloses that the petitions in all three cases are practically identical as respects the negligence charged. In truth, the respondents recognize the similarity of the petitions in the present case and in the Morrow case, for respondents say in their opinion: "On examination we find the petition to be almost identical with that in the Morrow case, and we hold the opinion in that case to be governing here."

In the Kuhlman case, we ruled that the doctrine *res ipsa loquitur* was inapplicable under the allegation of negligence contained in the

petition in that case. In ruling the matter, this division of this court said (307 Mo. 1. c. 637, 638): "But respondent (plaintiff) answers that the maxim *res ipsa loquitur* applies in the instant suit, so that the burden is upon appellant (defendant) to show that an excessive and dangerous amount of current was not sent through her (plaintiff's) home and appliances through its negligence, . . . But, whatever may be the rule in other jurisdictions, the rule is well settled in Missouri that the doctrine *res ipsa loquitur* does not apply where the plaintiff bases his recovery upon specific acts of negligence alleged in his petition, instead of charging negligence in general terms. In that situation, plaintiff assumes the burden of proving the specific acts of negligence alleged, and, as in other cases, must recover, if at all, upon the negligence pleaded. . . . Respondent bottoms her recovery upon certain alleged specific acts of negligence, one of which is that appellant 'negligently permitted and caused current in dangerous and deadly amount to pass over the wires and through the equipment into said home.' The burden rested upon respondent to prove the specific act of negligence alleged and it did not devolve upon the appellant to show that it did not negligently permit and allow a high tension current to pass over and through said wires and equipment." Following our ruling in the Kuhlman case, we held that the petition in the Morrow case (315 Mo. 1. c. 388) charged specific, and not general, negligence.

As conceded in the opinion of respondents, the petition in the present case is almost identical with the petition in the Morrow case; wherefore, in line with our rulings in the Kuhlman and Morrow cases, the petition in the present case likewise must be held by its averments to charge specific, rather than general, negligence. Inasmuch as the petition in the present case charges specific, and not general, negligence, it follows that the doctrine or rule *res ipsa loquitur* is inapplicable in the present case; and hence the opinion of respondents herein, in finding and holding "the rule of *res ipsa loquitur* to be applicable here," contravenes the rulings and decisions of this court in the Kuhlman and Morrow cases, supra.

II. Having pleaded specific negligence, the plaintiff (in the cause under review) cannot rely upon presumptive negligence (under the rule *res ipsa loquitur*) to make out his case. "One who pleads specific acts of negligence must prove such negligence, or enough of such acts to justify a recovery, and a failure so to do bars him from a recovery. And this is true although he might have pleaded negligence generally and by an invocation of the doctrine *res ipsa loquitur* had a recovery upon making proper proof. . . . One cannot plead specific acts of negligence and rely upon presumptive

negligence to bridge the chasm in making out a case for the jury.''
[Pointer v. Mountain Railway Construction Co., 269 Mo. 1. c. 114, 117.]

In reliance upon the above-quoted principle of law announced by this court, relator contends that the evidentiary facts herein, as found and stated by respondents in their opinion under review, do not amount to positive, or even circumstantial, proof of the specific negligence pleaded in the petition, and that such facts are insufficient to warrant a submission to the jury of the specific negligence pleaded, or to allow a finding and verdict thereon to stand. In other words, it is the contention of relator that a finding of the pleaded negligence under the evidentiary facts, as disclosed by respondents' opinion herein, is necessarily a matter of mere speculation and conjecture, and a finding that relator is guilty of the negligence charged could only have been reached by the jury by building presumption upon presumption, and by basing inference upon inference. It is therefore insisted by relator that the opinion and decision of respondents is in conflict with certain prior decisions of this court, which announce the general rule or principle of law that the liability of a defendant, arising out of specific acts of negligence charged against such defendant, cannot be builded upon presumptions or inferences, and that there must always appear from the evidence in any such case some strong circumstantial fact, at least, from which such pleaded negligence can be reasonably and legitimately inferred, without grounding the alleged negligence of defendant upon mere speculation and conjecture. The prior decisions of this court claimed by relator to have been contravened by respondents' opinion herein are Pointer v. Mountain Railway Construction Co., 269 Mo. 104, and State ex rel. Missouri Public Utilities Co. v. Cox, 298 Mo. 427.

In the Pointer case (269 Mo. 1. c. 120), GRAVES, C. J., speaking for a majority of this Court en Banc, quoted approvingly the reasoning and the principle of law announced by the Court of Appeals of Maryland in Benedick v. Potts, 88 Md. 1. c. 55 (thereby adopting the reasoning and the principle of law announced by that court as our own), as follows: ''It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. *But this inference must, after all, be a legitimate inference and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them.* This principle is never departed from, and in the very nature of things it never can be disregarded.'' (Italics ours.)

In State ex rel. Missouri Public Utilities Co. v. Cox, 298 Mo. 427, 433, which was a proceeding in certiorari to review the record of the

Springfield Court of Appeals in an action wherein the relator was charged with negligently and carelessly permitting electricity to escape from its transmission wires, thereby causing the death of the husband of plaintiff in the action, Division Two of this court, in quashing the opinion and record of the said Court of Appeals, said: "The Court of Appeals say there is evidence in this case, which they say they have quoted, which shows that the guy wire maintained by it (relator) and in close proximity to which plaintiff's husband was found dead, was shown to have been so placed as to have permitted its electricity to escape through such guy wire and thus become dangerous to those who might be passing around or near it. The only evidence that approximates that from which they say they quote is that the guy wire was so loose and slack that it could be pushed in either direction in contact with the two high-tensioned wires, or could be blown to contact with them by the wind; and that after the deceased died, a horse, while grazing, was seen to walk under this guy wire and receive a shock. Loath as we are to differ with the learned court, we do not think that the above testimony rises to the dignity of evidence. There is no testimony that the guy wire actually came in contact with one of the two high-tensioned wires, or that it was blown to contact. The circumstances and conditions under which the horse received the shock were not shown. Without evidence that the conditions were the same, we may not assume that they were. In order to assume that the guy wire was charged with electricity at the time of the death of deceased, it is necessary to infer that it was pushed to contact with the two high-tensioned wires, or blown to such contact by the wind. . . . There is no evidence in the record, positive or circumstantial, that the things, just above mentioned, happened. We have held in many cases that a presumption may not be based on a presumption so as to permit a recovery."

The decision from which we have just quoted was lately followed by this division of this court in Layton v. Chinberg, 282 S. W. 434, 436, wherein plaintiff sought recovery for injuries received in falling from the top of a brick wall of a building under construction, upon which he had been put to work by defendant. The petition in that case charged defendant with negligence in the putting of plaintiff to work upon a brick wall, recently laid, the mortar of which wall was "soft, pliant and yielding, thereby rendering the wall weak and not sufficiently strong to sustain the weight of plaintiff, while engaged in working upon said wall." The testimony of plaintiff was to the effect that, while working upon the top of the *east* wall of the building, "something gave way," and that he had a sensation of "everything falling away from me" (him). Another witness on behalf of plaintiff testified that, while walking on the top of the *west* wall of the building on the morning of plaintiff's injury, "every once

in a while a brick would turn up with me and go back in place."
Plaintiff was injured on a Monday morning, and there was evidence
on plaintiff's behalf that the brick masonry of both the east and west
walls was laid, and the construction of both walls was finished, on the
preceding Saturday, and that the construction of the walls had been
"rushed along." Plaintiff suffered an involuntary nonsuit *nisi*, and
in affirming the judgment entered for the defendant below, RAGLAND,
P. J., speaking for this division of this court, said: "Was plain-
tiff's fall caused by soft, pliant, and yielding mortar in the east wall?
If, from the fact that when a person (was) walking along on the
west wall every once in a while a brick would turn up and go back
into place, it can be inferred that the mortar in the west wall was soft,
and upon that inference the further inference be drawn that the
mortar in the east wall was soft, and upon that inference the still
further inference be based that plaintiff was thrown out of balance
because the soft mortar in the east wall permitted a brick under his
foot to give way, the question can be answered in the affirmative.
These inferences, as we have endeavored to show, cannot be legitimate-
ly drawn, but, if drawn, they do but spin out into the baldest con-
jecture. [State ex rel. v. Cox, 250 S. W. 551, 298 Mo. 427.]"

Respondents, in answer to the contention of relator, insist that
their opinion and decision, herein under review, follows the rulings
of this court announced in Morrow v. Mo. Gas & Electric Service
Co., 315 Mo. 367; Solomon v. Light & Power Co., 303 Mo. 622; and
Vessels v. Light & Power Co., 219 S. W. 80; all of which decisions
are cited in respondents' opinion in support of the legal conclusion
reached in the present case. It is claimed by respondents that the
evidentiary facts in the cases cited are closely similar to the evi-
dentiary facts in the present case, and that this court has ruled, un-
der such evidentiary facts, that there was sufficient and substantial
evidence upon which to submit the alleged negligence of the defend-
ant utility company to the finding and determination of a jury.
But, in each of the cited cases, substantial evidence was educed tend-
ing to show a contact between the primary and secondary wires of the
defendant's electrical transmission system, whereby the high voltage
of the primary wires could have been communicated to and through
the secondary wires onto the premises of the party injured, and that
such dangerous contact and condition had existed for a sufficient
length of time prior to the injury inflicted to impart notice to de-
fendant of such dangerous condition. Thus, in the Morrow case,
the opinion of this court recites that "there was substantial evidence
upon plaintiff's part that . . . on the morning of the discovery
of deceased's body, defendant's manager noticed a 2300-volt primary
wire and one of the secondary wires which supplied deceased's
residence in contact with a limb or limbs of a live or green tree;

that defendant's lineman saw burns upon this limb on the same morning; that sparks were seen to fly from the branches of this same tree some two weeks before the casualty; plaintiff's experts were of the opinion that the 2300 voltage, or slightly less, of the primary wire, in contact with a green limb, could be carried by the green limb of the tree to the secondary wire, also in contact with the limb, and thence into deceased's residence and through the body of the deceased to the ground;'' from which evidence, taken and considered in connection with other attendant facts and circumstances in evidence, we reached the legal conclusion (quoted in respondents' opinion herein) that plaintiff had shown ''with reasonable certainty that deceased's death resulted from contact with a secondary wire in the drop cord charged with electrical current in excessive quantities and of such high voltage as to be dangerous to anyone touching the drop cord, a cause for which defendant, by the great weight of authority in this and other jurisdictions, is liable in damages.''

In the Solomon case, the opinion of this court recites that ''the plaintiff produced substantial evidence tending to show that defendant's wires running through the trees . . . were permitted to sag; that in places near the trees the insulation had worn off; that the green limbs of the trees, when the wind was blowing, were sufficient to cause the 2300 voltage wire to come in contact with the wire of 110 voltage, and communicate to the latter a part, at least, of the 2300 voltage in excess of 110; that the above conditions had existed for a sufficient length of time to impart notice to defendant; that sparks had been seen flowing from the wires in said trees for some time before the death of decedent;'' from which recited evidence this court reached the legal conclusion, expressed in the opinion, that ''the foregoing facts presented to the jury a typical case of strong circumstantial evidence, upon which they were warranted in returning a verdict for plaintiff, based upon proper instructions.'' And so in the Vessels case, the opinion of this court recites: ''There was evidence that these wires, the primary and secondary, were knowingly permitted by defendant to rub against each other from the action of the wind during the period of at least ten months. That this tendency was increased by contact with the branches of a tree, which naturally wave in the wind; that the conditions both of moisture and metallic contact existed at the point where the fatal stroke was received, which were liable, in the course of the movements of the deceased with the lamp in his hand, to place his body in a ground circuit; together with the fact that his death did occur under circumstances which have suggested no other explanation— were all incidents within the charges of the petition, and amply authorized the submission of the cause upon the theory of negligence therein pleaded.''

It is apparent from respondents' opinion herein that the proof in the present case differs materially from the proof in the Morrow case, for, after reciting several points of similarity in the proof in the present case and in the Morrow case (namely, that the drop cord had previously been handled in safety; that the usual and normal current and voltage delivered by defendant to the home of the injured person was approximately 110; that such voltage is not usually dangerous to a normal, healthy person; that the person injured was in good health; that neighbors served by the same secondary wires had received shocks when handling electrical fixtures and appliances within their respective homes on the date of the injury, or immediately prior thereto), respondents then say in the opinion: "So far the facts of the two cases run almost parallel. *But in the Morrow case there was proof that the primary wire through which the current was furnished had been in contact with the limbs of a tree through which the secondary wires passed.*"

The above-quoted observation from respondents' opinion, wherein respondents differentiate the character and scope of the proof in the Morrow case from that in the present case, amounts to an admission or concession that, in the present case, there is an absence of any substantial evidence tending to show that there was a contact between the primary and secondary wires of relator's transmission system, whereby the high voltage carried on the primary wires could have been communicated to the secondary wires extending to plaintiff's premises, and thence, through the drop cord in the garage, into and through the body of Albert Downey. The respective opinions of this court in the Morrow, Solomon and Vessels cases disclose that, in each of those cases, there was substantial evidence or proof of a contact between the primary and the secondary wires, whereby the high voltage of the primary wires could have been communicated to the secondary wires serving the premises of the person who suffered the electrical shock. In other words, respondent's opinion discloses, by the above-quoted concession and admission, that there is absent and lacking in the present case that element of proof which was present in the Morrow, Solomon and Vessels cases, namely, a substantial showing that there was a contact between the primary and secondary wires of defendant's transmission system whereby the high voltage of the primary wires could have been communicated to the secondary wires, and thence onto the premises of the injured person, which element of proof (lacking in the present case) removed the Morrow, Solomon and Vessels cases from the realm of mere speculation and conjecture, and enabled this court to reach the legal conclusion that the facts in evidence in each of those cases presented "a typical case of strong circumstantial evidence" upon which

to predicate the reasonable and legitimate inference and finding that the defendant utility corporation was negligent in the respect charged and alleged in the petition of the plaintiff therein.

The respondents' opinion recites that defendant (relator), by its answer herein, specifically denied that, at any time, it had negligently caused or permitted an electrical current of excessive voltage to be carried over its wires and into the residence and garage of the plaintiff, Albert Downey, and, moreover, specifically denied that an electrical current of the voltage properly and ordinarily carried into the residence and garage of Albert Downey is harmless, but, on the contrary, averred that the same is dangerous when used in defective and improperly insulated drop cords and appliances. The respective pleadings of the parties, plaintiff and defendant, therefore presented two widely different theories respecting the cause of plaintiff's injury; the theory presented by the petition of plaintiff being that plaintiff's injury was caused by an excessive, unusual and deadly current of electricity having been negligently allowed and permitted by defendant to traverse the wires running into the garage upon plaintiff's premises, and thence, through the drop cord in the garage, into plaintiff's body: and the theory presented by the answer of defendant (relator) being that plaintiff's injury was caused by the proper, ordinary, usual, and normal house-service current of 110 volts, which current voltage of 110 becomes, and is, dangerous when used in a defective and improperly insulated drop cord or appliance. Respondents' opinion further recites that "the testimony in defendant's behalf served only to oppose plaintiff's position in the matter"; from which recital of the opinion we understand respondents as meaning, and as intending to say, that substantial evidence was educed by defendant (relator) in support of the theory presented by its answer, namely, that Downey's injury was caused by the normal, ordinary and usual house-service current of approximately 110 volts (a cause for which relator cannot be held liable in Downey's action under the allegation of specific negligence in the petition therein), and which normal and ordinary voltage is not harmless, but becomes, and is, dangerous when used in a defective and improperly insulated drop cord and appliance, such as the drop cord and appliance being used by Downey at the time of his injury, which drop cord, appliance, and electrical wiring (respondents say in the opinion) relator claims was "extremely crude, patched up, and unfit for use," and which is shown by respondents' opinion to have been constructed and maintained by the plaintiff Downey, and not by relator. Who can say with any reasonable assurance or certitude, under the evidentiary facts herein, that Downey's injury was caused by an electrical current in excess of the normal voltage of 110 or 115, ordinarily and usually trans-

mitted over the secondary, or house-service, wires of relator to the premises of Downey? And where is there any evidence, direct or indirect, positive or circumstantial, tending to show that the current of electricity passing through the drop cord in the garage at the time of Downey's injury was excessive, unusual and deadly in voltage, or that the voltage of such electrical current was other than the normal, ordinary and usual voltage carried upon the secondary wires of relator's transmission system?

Evidently respondents, believing (as they say in the opinion) the rule or doctrine of *res ipsa loquitur* to be applicable in the present case, have predicated their finding of relator's liability upon presumptive negligence, which cannot be done in view of the fact that the petition of plaintiff (Downey) charges specific, rather than general, negligence. It would seem to be apparent from the evidentiary facts herein that, in order to reach a finding of relator's liability, an inference must be drawn that Downey's injury was caused by a current of electricity in excess of the ordinary, usual and normal voltage of 110 or 115 carried upon the secondary wires of relator's transmission system, and upon such inference must be based the further inference that such excessive and unusual voltage was occasioned by a contact between the primary and secondary wires of relator's transmission system, or by some defect or insufficiency in the wires, transformers, or other voltage reducing and transmission appliances of relator, and upon such inference must be based the further inference that such dangerous condition or defect in relator's transmission system had existed for sufficient length of time prior to Downey's injury to have imparted notice or knowledge thereof. to relator, and upon the several successive inferences so drawn and builded together there must be superadded and superimposed the further inference that the inferred cause of Downey's injury proceeded from the negligence of relator. We believe, as was said by RAGLAND, P. J., speaking for this court in Layton v. Chinberg, supra, that "these inferences cannot be legitimately drawn, but, if drawn, they do but spin out into the baldest conjecture."

The opinion of respondents herein discloses, we think, that the relator's liability is builded wholly upon successive inferences and presumptions, and is therefore grounded on mere speculation and conjecture. Hence, we deem the opinion and decision of respondents to be in conflict with the prior decision of this court in Pointer v. Mountain Railway Construction Co., 269 Mo. 104, which announces the general principle of law that, when specific negligence is alleged (as in the present case), presumptive negligence cannot be relied upon to make out plaintiff's case, but the specific negligence pleaded must be established and proved by substantial evidence; and also to be in conflict with the prior decisions of this court in State ex rel.

688

v. Cox, 298 Mo. 427, and Layton v. Chinberg, 282 S. W. 434, which announce the general principle of law that the actionable liability of a defendant for negligence cannot be grounded on mere speculation and conjecture, or builded upon successive inferences and presumptions.

It therefore follows that the opinion, judgment and record of the respondent Court of Appeals under review in this proceeding must be quashed, and it is so ordered. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.