J. J. SANDERS and EMMA SANDERS v. CITY OF CARTHAGE, a Municipal Corporation, Appellant.—51 S. W. (2d) 529.

Division One, June 13, 1932.*

---

*NOTE: Opinion filed at October Term, 1931, April 2, 1932; motion for rehearing filed; motion overruled at April Term, May 27, 1932; motion to transfer to court en banc overruled June 13, 1932.

*Elza Johnson* and *Frank R. Birkhead* for appellant.

*J. D. Harris* for respondents.

846

HYDE, C.—This cause has been certified here, under Section 6, Amendment of 1884, Article VI, of the Constitution of Missouri, by the Springfield Court of Appeals. It is a suit to recover damages for the death of plaintiffs' minor son, who was killed by contact with an electric wire belonging to defendant, the city of Carthage. The Court of Appeals first reversed and remanded the case, but, upon rehearing, affirmed it and certified it here as in conflict with former decisions of the other Courts of Appeals. [9 S. W. (2d) 813.]

The defendant owned and operated a municipal electric light plant. One of its lines of poles and wires ran east, along 13th Street, to the city limits of the city of Carthage. From this point a road, known as 13th Street Road, continued east. About two years prior to April 9, 1925, defendant constructed a continuation of its line, along the north side of 13th Street Road about one-half mile east of the city limits, for the purpose of supplying electric current to houses on that road. This line was constructed with new poles, wires, and other equipment. The farm home of W. K. Alexander was one of these. It was located on the north side of 13th Street Road.

Plaintiff, J. J. Sanders, had a contract with Alexander to clear ten acres of his land, and plaintiffs' son, Ezra Sanders, seventeen years old, was doing most of the work. On the morning of April 9th, Ezra Sanders came, in a Ford car, to continue this work, from plaintiffs' home seven miles farther east. He turned into the Alexander driveway and got out of his car to open the gate. Upon approaching the gate he was seen to raise his hand above his head and take hold of a wire. He immediately fell back and was found,

by persons who rushed to the scene, electrocuted. An electric wire, with fire coming from it, was in his right hand and across his breast. Defendant's officials were sent for and the wire was cut down, by them, from the pole. The wire was the north one of defendant's two primary wires on this line, which carried a current of 2200 volts. It was found that this wire had apparently burned apart about nine feet from the pole to the east of the driveway. The distance between the poles was about 100 feet. The longer piece of the wire remained attached to the pole west of the driveway but the east end of it dropped down onto and hung over the limb of a walnut tree east of the gate. This left the wire, between the pole and the tree looped down over the driveway on the north edge of the public road, within reach of a person on the ground.

The evening before, about seven o'clock, there had been an electrical storm, and the persons living in the neighborhood noticed a very loud crash, as though lightning had struck nearby. This caused the electric lights to go out of commission at the Alexander house, and at all the houses east of it. The telephones in these houses were also put out of order. The telephone wire was on shorter poles, under the light wires, and had been burned in two at about the same place as the electric wire. At the Alexander house, and the next house west, the lights were turned off when the storm started. These people did not discover that night that the lightning had interrupted their light service. Others, farther east, noticed that their lights went out immediately after the crash, but did not attempt to telephone the light plant and did not discover that their telephone was out of order until the next morning, when a man engaged in road work tried to telephone to town. It was about seven o'clock, on the morning after the storm, that Ezra Sanders came in contact with the wire.

It was shown that there were devices manufactured which would show when a wire on any circuit became grounded, but that defendant's plant was not equipped with them. There was evidence on the part of defendant that such devices were impractical in plants with such long circuits and with such a complicated system as defendant operated. It was also shown that it would be possible to shut off one of the several circuits without interfering with the rest of the system. No electrician was on duty at defendant's plant after the storm. The man in charge was an engineer who said his duties were to keep the engines and generators going and keep up the peak load. Asked what he did if the instruments showed the load pulled down from the peak load, he said: "I raise her up, turn on more juice." He said there was no interference that night. The two pieces of the wire, which were cut down from the poles, were introduced at the trial. It was shown that the wire was broken by being

848

burned or melted and had the appearance of a break made by lightning. The insulation was known as triple braid, composed of three layers of fabric, treated with asphalt. The insulation was in good condition except that it was charred at the place where Ezra Sanders had taken hold of it. All the witnesses who saw the wire on the morning Ezra Sanders was killed said that the insulation appeared to be in good condition except that it was burned off where he had hold of the wire. Defendant's evidence was that if a person, standing on wet ground, touched the wire, the current would leak through and melt the insulation, break down its resistance, and burn through it. The last inspection of the line by defendant had been about the middle of March. Nothing was shown to be wrong with the line before the storm.

Plaintiffs' petition alleged negligence as follows:

("That the *defendant had carelessly and negligently suffered and permitted one of its electric wires* strung as aforesaid upon the line of poles on said highway at a place in front of said Alexander property, to become broken and detached from said poles, and then and there *to be hanging down in said public highway heavily charged with electricity*), (and had carelessly and negligently failed to keep said wire properly insulated and suffered and permitted the insulation upon said wire which had fallen as aforesaid, to become worn, defective and destroyed, *so as to permit a deadly current of electricity to escape therefrom*)."

Defendant's answer was a general denial. A plea that the breaking of the wire was caused by an act of God, which the defendant neither knew nor had sufficient time to discover, and a plea of contributory negligence. Plaintiffs' reply was a general denial. Plaintiffs had judgment for $3,000, from which defendant has appealed.

■ ■ The assignments of error, urged by defendant, are: Giving plaintiffs' Instructions 5 and 7; refusing defendant's Instruction A. Defendant assigned, also, refusal of its several demurrers (General and Special) to the evidence, but has, apparently, abandoned these assignments in its points and authorities. However, its demurrers asked at the close of the case were properly overruled, and the others were waived by offering evidence.

Except as to the issue of the value of services, plaintiffs only examined two witnesses, Mr. Alexander and his neighbor, Mr. Tarrant. They were not eyewitnesses. Plaintiffs showed by them only the finding of the dead boy in the driveway, with the burning wire in his hand. The severe lightning flash of the storm the evening before, indicating how long the light and telephone systems were out of commission, was shown by defendant's cross-examination of these witnesses. The defendant produced the eyewitnesses, the other neighbors, the employees in charge of its light plant and the

electrical experts. Defendant undertook to show by these witnesses that the deceased boy was guilty of contributory negligence and that it was not negligent, in failing to discover and remove the broken wire, during the twelve hours between the storm and the death of the boy. After the court overruled its demurrer to plaintiffs' evidence, defendant voluntarily undertook to convince the jury of these matters, which it had set up in its answer, but failed to do so. It cannot now be permitted to complain of its own action, in furnishing sufficient evidence to justify the jury in finding it guilty of negligence, on the ground that plaintiffs should have produced this evidence. It, also, seems probable from the evidence, that this unfortunate boy may not have seen the death dealing wire, when he got out of his car, or deliberately went to remove it. It is just as likely that he saw it, just before he touched it, on his way to the gate, and involuntarily reached out to throw it aside. At any rate, the evidence, certainly, does not show him to be guilty of contributory negligence as a matter of law. The question of whether or not defendant was negligent in failing to discover the dangerous condition of the wire and remove it between the time of the storm and the boy's death was, under the evidence, clearly for the jury to determine. The time the condition was shown to have existed, certainly, was not, as a matter of law, too short for defendant, in the exercise of the care required of it, to have discovered and remedied it.

Defendant's objection, to the court's action in giving plaintiffs' Instruction 7, and refusing defendant's Instruction A, stated in his points and authorities, is that, under the pleadings, this case cannot be submitted upon the theory of res ipsa loquitur. Defendant says that plaintiffs pleaded specific negligence, but were permitted by this instruction to recover, not upon the specific negligence pleaded, but upon general negligence (merely showing the wire was down). Defendant says that this violates the rule that the doctrine of res ipsa loquitur cannot be relied upon when specific negligence is pleaded.

Instruction 7 is as follows:

"The court instructs the jury that it was the duty of the defendant to exercise the highest degree of care practicable among prudent, skillful and experienced men in the same kind of business, to have its wires properly insulated, so as to prevent the escape of dangerous electric current therefrom coming in contact with its wires on its poles to prevent the same from breaking and hanging down onto said highway, so that people might come in contact therewith, in order that said highway might be preserved reasonably safe for the unobstructed use and travel by the public and persons entitled to be thereon in exercise of their lawful rights; and you are further instructed that if one of the defendant's wires was broken and hang-

850

ing down on the public highway, mentioned in the evidence charged with a high and dangerous current of electricity, and that the deceased, Ezra Sanders, came in contact therewith, while exercising ordinary care on his part for his own safety, if you so find, and was injured and killed by the electric current escaping therefrom *the presumption is that his injury and death was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, in permitting said wire to be hanging down on said road at the time he came in contact with it, and that the injury, if any, was occasioned by inevitable accident or some cause that such highest degree of care could not have avoided."*

There can be no doubt that the principle of law, stated by defendant, is correct. A plaintiff cannot plead specific negligence and upon failure to prove it rely upon the doctrine of *res ipsa loquitur* "to bridge the chasm in making out a case for the jury." [Pointer v. Mountain Ry. Const. Co., 269 Mo. 114, 189 S. W. 808, L. R. A. 1917B, 1091; Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, 271 S. W. 788; State ex rel. City of Macon v. Trimble, 321 Mo. 671, 12 S. W. (2d) 727.] Neither is he permitted, even though he has alleged general negligence, if his proof shows specifically the cause, to submit the case to the jury upon instructions on the theory of *res ipsa loquitur.* [Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21, and cases therein cited.] This is because a plaintiff can neither definitely state nor show that his injury was caused in a certain way and then allow the jury to speculate on whether it was caused in some other way.

■ Defendant separates the charge of negligence in the petition into two parts, as we have indicated above by parentheses. Defendant says that the first part, concerning the wire hanging down, alleges general negligence, but that the second part, concerning the insulation, alleges specific negligence, and that the Springfield Court of Appeals so held in its first opinion. We, however; think that the charge of negligence, in fact, is all one charge, and that, in substance, it alleges that *defendant negligently permitted a wire, heavily charged with electricity, to be hanging down in the highway, with its insulation permitted to be in improper condition, so as to permit a deadly current of electricity to escape therefrom.* We think this charges specific negligence under our rulings in Kuhlman v. Water, Light & Transit Co., 307 Mo. 607, 271 S. W. 788; Morrow v. Gas & Electric Service Co., 315 Mo. 367, 286 S. W. 106; State ex rel. City of Macon v. Trimble, 321 Mo. 671. 12 S. W. (2d) 727, and Berberet v. Electric Park Amusement Co., 319 Mo. 275, 3 S. W. (2d) 1025. What is said in Gannon v. Laclede Gaslight Co., 145 Mo, 502, 47 S. W.

907, cited by plaintiff, on the question of pleading as applied to *res ipsa loquitur* cases is not in accord with these and other later cases. [See Pointer v. Mountain Ry. Const. Co., supra, upon which the Kuhlman case is based.] For allegations stating a *res ipsa loquitur* case, see McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, hereinafter discussed. However, what this court said in the majority opinion in the Gannon case was with reference to variance between the pleading and proof. The question of whether the petition stated general or specific negligence was not raised.

In the Kuhlman case the petition charged that the defendant "negligently permitted and caused current in dangerous and deadly amounts to pass over the wires and through the equipment into said home" of the plaintiff. In the Morrow case the petition charged that the defendant "had carelessly and negligently caused or permitted said drop cord to become and be charged with electric current in such excessive quantities and of such high voltage as to be dangerous to anyone touching, or in any manner coming in contact with any such drop cord." In State ex rel. v. Trimble, the petition charged that defendant "carelessly and negligently furnished and caused to be furnished to the plaintiff, and negligently permitted dangerous, excessive, unusual and deadly current and electricity to traverse the wires running to and into said residence and garage of the plaintiff, and thereby carelessly and negligently caused plaintiff to receive said severe electric shock." In all three of these cases this court held that these charges were charges of specific negligence. In State ex rel. v. Trimble, supra, the Kansas City Court of Appeals held that specific negligence was not alleged and that the rule of *res ipsa loquitur* was applicable. This court in quashing the opinion of the Kansas City Court of Appeals said, 12 S. W. (2d) l. c. 731, quoting from the Kuhlman case:

" 'The burden rested upon respondent to prove the specific act of negligence alleged and it did not devolve upon the appellant to show that it did not negligently permit and allow a high tension current to pass over and through said wires and equipment.' "

The court further said:

"In line with our rulings in the Kuhlman and Morrow cases, the petition in the present case likewise must be held by its averments to charge specific, rather than general, negligence. Inasmuch as the petition in the present case charges specific, and not general, negligence, it follows that the doctrine or rule of *res ipsa loquitur* is inapplicable in the present case; and hence the opinion of respondents herein, in finding and holding 'the rule of *res ipsa loquitur* to be applicable here,' contravenes the rulings and decisions of this court in the Kuhlman and Morrow cases, supra."

The word "permit" ordinarily implies knowledge and consent, and has been defined as meaning "to allow after notice or knowledge." [48 C. J. 925.] As used in the petition in this case, where the negligence claimed must consist of allowing the dangerous condition to exist for more than a reasonable length of time to discover and remedy same, it amounts to the same thing as alleging that defendant permitted the condition, alleged, to exist when it knew, or by the exercise of the care required of it could have known, of it in time to have remedied it, before plaintiff's son came in contact with it. This proposition is amply sustained by many rulings of this court.

In Berberet v. Electric Park Amusement Co., 319 Mo. l. c. 279, 3 S. W. (2d) 1025, 61 A. L. R. 1269, plaintiff, who was injured by falling over a loose board in a sidewalk leading to a merry-go-round in defendant's park, alleged "said defendant was guilty of careless and negligent acts in permitting and leaving a board in said sidewalk in an unsafe and dangerous condition." In construing this petition this court said:

"The charge that defendant was guilty of careless and negligent acts in permitting and leaving a board in said sidewalk which was loose and unfastened and in an unsafe condition was equivalent to a charge that defendant knew, or in the exercise of ordinary care could have known, that the board was loose and in an unsafe condition. An allegation, or a finding, that a defendant negligently caused and permitted an unsafe described condition is equivalent to an allegation or a finding that the defendant knew the condition to exist."

It was, therefore, held that under these pleadings the doctrine of *res ipsa loquitur* did not apply. [See, also, Hall v. Missouri Pacific Ry. Co., 74 Mo. 298; Crane v. Missouri Pacific Ry. Co., 87 Mo. 588; Johnson v. Missouri Pacific Ry. Co., 96 Mo. 340, 9 S. W. 790; Young v. S. H. & H. Iron Co., 103 Mo. 324, 15 S. W. 771; Zasemowich v. American Mfg. Co., 213 S. W. 799; Morton v. Lloyd Construction Co., 280 Mo. 360, l. c. 381, 217 S. W. 831; Byers v. Essex Inv. Co., 281 Mo. 375, 219 S. W. 570; Midway Nat. Bank & Trust Co. v. Davis, 288 Mo. 563, 233 S. W. 406; Rice v. White, 239 S. W. 141; Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S. W. (2d) 408; Kramer v. M. K. & T. Ry. Co., 32 S. W. (2d) 1075.] We, therefore, hold that plaintiffs' petition alleged specific negligence and that it was erroneous to submit the case on the theory that the doctrine of *res ipsa loquitur* was applicable.

Plaintiffs' Instruction 7 was also erroneous, even in a *res ipsa loquitur* case, under the recent ruling of this court en banc in McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557, overruling such former decisions as Price v. Metropolitan Street Railway, 220 Mo.

435, 119 S. W. 932, and Bond v. St. L. & S. F. Ry. Co., 315 Mo. 987, 288 S. W. 783.

Instruction A offered by defendant here told the jury "that the burden of proof is upon plaintiffs in this case to prove their case by a preponderance of greater weight of the evidence" and then proceeded to define the terms "burden of proof" and "preponderance of (evidently a typographical error) greater weight of the evidence." Since this case must be retried it is well to note that an instruction like this one was criticized in the opinion of this court in Hayes v. Sheffield Ice Co., 282 Mo. 446, 221 S. W. 705, on the ground that, literally construed, it would mean that the plaintiff would have the burden of showing that there was no contributory negligence, but the majority of the court did not concur in this part of the opinion as applicable to all cases. (In that case defendant offered no evidence, and plaintiff's evidence was therefore uncontradicted). A better form is that approved in Stolovey v. Fleming, 320 Mo. 946, 8 S. W. (2d) 832.

Since this case must be retried, we will also consider plaintiffs' Instruction 5 complained of. It was as follows:

"The court instructs the jury that if they believe from the evidence that said wire at the place where deceased was standing at the time he received his injuries, if any, had all the appearances of being properly insulated, that this then was an invitation or inducement to said deceased to risk the consequences of contact with said wire in removing the same from the entrance way to said farm."

This instruction is a copy of an instruction given on the part of the plaintiff in Geismann v. Missouri Edison Elec. Co., 173 Mo. 654, 73 S. W. 654. The court there criticized it as announcing an abstract proposition of law, in the language used by the courts of other states *arguendo* in electrical cases, but held that considered in connection with all the instructions in the case it was nonprejudicial. It is a rather reckless use of language to say that the condition of the wire was an invitation to touch it when what, evidently, is meant is that it gave no warning of its danger. Such language should not be used in an instruction, particularly, after it has been previously criticized by this court. This instruction should not be given on the retrial of this case.

The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. *Atwood* and *Ragland, JJ.,* concur; *Gantt, P. J.,* and *Frank, J.,* concur in result.