William P. CARTER, Respondent,

v.

LIBERTY EQUIPMENT CO., INC., Appellant.

No. WD 30910.

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

Thomas W. Wagstaff and Benjamin F. Mann, Kansas City, for appellant.

Joseph W. Amick, Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Respondent, William P. Carter, recovered judgment in this action for injuries he received when an air compressor towed by the vehicle of Liberty Equipment Co., Inc. became detached from the truck and collided with a store building striking Carter inside the building. Liberty appeals contending error in the instructions and submission of the case.

The pertinent facts are not here and were not at trial the subject of any significant dispute. The accident occurred in Kansas City during daylight hours on August 16, 1972. Liberty's truck was northbound on Broadway towing an air compressor. At a point near a store building on the west side of the street where Carter was at work, the device by which the trailer and air compressor were attached to the truck disengaged,

the trailer crossed the street diagonally and crashed through the window, entered the store and struck Carter. The nature of Carter's injuries and their origin in this accident are not here at issue and need not be discussed.

The trailer hitch by which the mobile compressor was attached to the truck was recently installed, but it had performed without incident prior to the accident and had served during transport of the machine from Cole Camp to Kansas City, a distance of some one hundred miles. After the accident, the hitch was examined and found to be in proper working order and apparently free of any defect. No evidence offered any explanation as to the cause of the mishap and why the trailer had separated from the towing vehicle.

Carter's petition alleged, first, that the Liberty employees, the driver of the truck and a passenger, were negligent in permitting the air compressor and trailer to collide with the storefront. No particulars of specific acts or omissions claimed to have been negligent were described. Second, the petition charged general negligence attributable to the event itself which would not have occurred but for the negligence of Liberty. Included were allegations that the instrumentality, the truck and compressor, were under the control of Liberty and that the cause of the accident was more readily ascertainable by Liberty because of its superior knowledge. No challenge to the sufficiency of the petition allegations was made and the case has proceeded on the assumption that a satisfactory pleading asserted a cause of action for both general and specific negligence.

In the course of trial, some evidence was elicited as a part of plaintiff's case touching on the use of safety chains in conjunction with trailer hitches. The substance of the evidence was that safety chains function to guard against detachment of trailers upon failure of the hitch but that no safety chain had been installed on the Liberty vehicle. No expert witnesses were called and no evidence described the frequency or conditions for use of safety chains or any standards governing their use. Also absent was any evidence from which the effectiveness of a safety chain in preventing the subject accident could have been forecast. The evidence did leave open for speculation the effect which prior installation of a safety chain may have had on restraint of the compressor trailer and Carter's attorney commented on the subject in closing argument.

The case was submitted to the jury on general negligence under instruction applicable to the doctrine of res ipsa loquitur. Liberty argues, as its first point on appeal, that Carter was not entitled to this submission because Carter's evidence identified the cause of the accident to have been the absence of a safety chain. They contend that a plaintiff is precluded from recourse to the presumption or inference which the res ipsa rule affords when plaintiff's own evidence establishes the cause of the accident and, thus, removes that element of the case from the area of conjecture.

Interrelated with the first point are Liberty's associated contentions that although Carter's evidence did establish the accident cause, he made no proof that any standard made prudent the use of safety chains on trailers and he therefore made no submissible case on the negligence of Liberty or its employees in operating the vehicles without safety chains. Thus, in Liberty's view of the case, Carter could not employ a theory of recovery on general negligence because the precise cause of the accident was shown and a specific negligence submission was unavailable because Carter's evidence did not link the accident cause with Liberty's negligence.

A similar argument was advanced in *McDowell v. Southwestern Bell Telephone Co.*, 546 S.W.2d 160 (Mo.App.1976), where plaintiff suffered a hearing loss when a loud noise was emitted by a telephone receiver. Citing *Stevens v. Missouri Pacific Railroad Company*, 355 S.W.2d 122 (Mo. 1962), the court observes that a plaintiff may show the accident cause by his evidence but still not be deprived of the res ipsa doctrine if, after all of plaintiff's evi-

dence is in, the true cause of the casualty is still left in doubt or is not clearly shown. "Submission under the res ipsa loquitur doctrine may not be denied unless specific negligence, the real or precise cause is definitely shown by direct evidence." *Stevens v. Missouri Pacific Railroad Company, supra* at 130. We must therefore determine whether the evidence as to the safety chain in this case meets the standard of accident causation as proof of specific negligence.

Liberty's argument that Carter's evidence identified the true cause of the accident to have been the absence of a safety chain fails on at least two grounds. The validity of the contention depends on the assumption that a properly installed safety chain would have restrained the movement of the compressor when it became detached by separation of the hitch. There is, however, no evidence in this record to support such an assumption. Quite apparently, the size, strength and attachment of safety chains affects the function of the chain in restraining a disconnected trailer, as does the weight and size of the object being trailed. So, too, is the vehicle speed and ground terrain of importance in forecasting what would occur when a trailer hitch fails and control of the trailed object depends on the chain.

The record here is barren of any facts indicating the properties of safety chains or whether a chain adequate to control the Liberty compressor and trailer was available, much less in general use. The effect of a safety chain, had one been installed on the Liberty vehicle, is therefore a matter of pure speculation and conjecture. This falls far short of a definite showing by direct evidence that lack of a safety chain was the precise cause of the accident and, under the authorities cited, does not operate to deprive Carter of the res ipsa submission.

The second fallacy in Liberty's argument is that the true cause of the accident was not the lack of a safety chain, but the disengagement of the trailer hitch. No contention has been made that attachment of a safety chain would have affected operation of the hitch, only that the trailer would have remained attached by the chain once the hitch had separated. While it may well be argued that upon separation of the hitch, a chain would have restrained the trailer, assuming a factual basis establishing that a safety chain would have so performed here, the chain actually had no greater relevance to the true and precise cause of the accident than did the route of travel selected by the driver or his choice of a time to traverse Broadway when Carter was in the front area of the store. These are merely peripheral circumstances which themselves would have had no operative force but for the disconnection of the hitch.

■ In general, the doctrine of res ipsa loquitur is available to aid a plaintiff when (a) the occurrence resulting in the injury does not ordinarily happen when those in charge use due care, (b) the instrumentality was under the control of the defendant, and (c) the defendant possesses superior means of information as to the cause of the occurrence. *McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557 (banc 1932); *McDowell v. Southwestern Bell Telephone Co., supra.*

■ The thrust of Carter's claim is that the collision of the trailer with the building gives rise to an inference of negligence on the part of Liberty because the event speaks for itself. A trailer does not become detached while moving, under normal circumstances, if those in charge use due care. Thus, the detachment by some failure or misadventure of the hitch as yet unexplained, is sufficient to entitle Carter to the benefit of the res ipsa inference, and to a submission of his case to the jury without proof of specific negligence if it also appears, as here, that defendant was in control of the object and possesses a means of learning the cause superior to that of the plaintiff. The case is a classic application for the res ipsa loquitur doctrine and was correctly submitted to the jury on that basis.

■ Liberty's second point, the failure of Carter to prove specific negligent acts of the Liberty employees and the consequent foreclosure of any opportunity to claim vi-

carious liability as to the employer, Liberty, need not be addressed in detail because the case was not submitted on that theory. While the petition did, as earlier noted, contain allegations which could be construed as charging specific negligence, an election was made before submission to abandon that contention. This a plaintiff is entitled to do. *City of Kennett v. Akers*, 564 S.W.2d 41, 46 (Mo.banc 1978).

Liberty next contends that a new trial should have been granted because Carter's counsel was permitted to argue to the jury over Liberty's objection that the negligence of Liberty in failing to install a safety chain was the cause of the accident. This argument, they say, addressed specific negligence and conflicted with the instruction on general negligence under which the jury was to have been governed. Cited are *Rea v. St. Louis-San Francisco Railway Company*, 411 S.W.2d 96 (Mo.1967); *Williams v. St. Louis Public Service Co.*, 363 Mo. 625, 253 S.W.2d 97 (banc 1952); *Sanders v. City of Carthage*, 330 Mo. 844, 51 S.W.2d 529 (1932); and *Conduitt v. Trenton Gas & Electric Co.*, 326 Mo. 133, 31 S.W.2d 21 (1930).

Each of the cases cited by Liberty turns, not on conflict between the theory of submission and the jury argument, but on the issue of whether the pleadings and evidence warranted a general negligence instruction. In *Rea*, plaintiff pleaded general negligence but his proof showed the precise cause of the collision, the negligence of a brakeman who mistakenly positioned a railway switch. The judgment was reversed because the general negligence submission was error when the proof was of specific negligence.

*Williams* did not involve any claim of prejudicial jury argument. In a contention similar to that made by Liberty here, the defendant in *Williams* asserted that plaintiff's proof of lurching movement by the streetcar on a sudden application of power showed the specific cause of the accident and that submission of the case on a general negligence instruction was error. Because the source of the irregular power thrust remained in doubt, whether a result

of negligent maintenance or negligent operation, the court concluded that a res ipsa instruction was correct and in accordance with plaintiff's pleaded theory.

In *Sanders*, the decision turned on the pleading. Plaintiff's petition had alleged specific negligence but the proof fell short and the case was submitted on a general negligence instruction. Under *Sanders*, a plaintiff may not use a general negligence theory not pleaded to rescue his case when no submissible case of specific negligence is made on the evidence. *Conduitt* was much like *Rea* in that evidence of the specific cause of the accident foreclosed a general negligence submission.

The authorities cited by Liberty are reviewed in some detail to demonstrate that they stand generally for the proposition that pleading, proof and submission must all be consistent with the same theory, but they do not rule the question raised by Liberty as to argument by counsel. Having concluded as we do that pleading and proof were consistent in this case with the general negligence submission, the issue is whether the trial court abused its discretion in permitting argument as to the lack of a safety chain and whether Liberty has shown prejudice.

In closing argument, counsel is afforded wide latitude to suggest inferences from the evidence and the trial court similarly has broad discretion to determine if a particular line of argument is proper. *Eickmann v. St. Louis Public Service Company*, 323 S.W.2d 802 (Mo.1959). In the exercise of its discretion the trial court is in the best position to appraise the consequence of argument and the appellate court may intervene only if it concludes that the trial court has abused that discretion. *Helfrick v. Taylor*, 440 S.W.2d 940 (Mo.1969).

We are not persuaded here that the trial court abused its discretion in permitting the limited comment which was made as to the absence of the safety chain. Where the submission of the case is, as here, on general negligence, the plaintiff has no burden to prove specific causation.

It is enough that the evidence show those elements previously enumerated establishing the ground invoking the benefit of the res ipsa theory. Of necessity, that evidence relates the facts surrounding the accident and includes facts which may or may not be considered by the jury as dispositive of the liability issue. In the nature of a general submission, the jury is not instructed that defendant's negligence consists of a particular act or omission and the verdict therefore does not reflect a factual determination of specific causation.

The evidence in this case described facts associated with the accident including the identities of the Liberty employees, driver and helper, the description, speed and direction of the truck and trailer, the accident locale and other details necessarily incorporated to present a full account of the events, to the extent they could be explained. The fact that no safety chain connected the trailer to the truck was undisputed, as were virtually all other facts in evidence. Counsel is, of course, entitled to comment on all evidence. Despite Liberty's objection to evidence concerning the safety chain, it was, as we have held, properly admitted and Carter's attorney was not obligated to ignore that fact in his argument.

The gist of the objection Liberty makes to the closing argument is that the evidence as to the safety chain was in some way immunized from any reference in argument and that mention of Liberty's failure to install a chain created some impermissible prejudice. In a general negligence submission, plaintiff's counsel, having no burden to show specific causation, will argue various possibilities from the facts in evidence and a combination of possibilities, reconcilable with the benefit which the res ipsa theory confers. Thus, Carter's attorney here speculated in closing argument on various reasons for disconnection of the hitch including improper installation of the hitch, improper attachment of the trailer, overloading and lack of a safety chain all being incidents one or more of which may have caused the mishap.

At the time Liberty objected to the argument, the court considered the objection and decided that what was said did not exceed proper bounds. In its motion for new trial, Liberty renewed the objection but did not prevail. On the whole record, we cannot agree that the rulings amounted to an abuse of the trial court's discretion.

Moreover, Liberty has failed to show that it suffered prejudice by reason of the argument and that the result was influenced by it. There is, in fact, no reason to believe that a different result would have followed were the argument not to have been permitted. While it is true that the jury did consider the element of the absent safety chain as evidenced by their question to the court sent during deliberations and discussed later in this opinion, the effect on the verdict is by no means demonstrated. Equally likely is the possibility that the jury considered the failure of Liberty to attach a safety chain as indicative of negligence in attaching the hitch device or of negligence in connecting the trailer to the truck. Such retrospective conjecture is an attribute of a jury verdict on general negligence, but does not serve to establish an abuse of the trial court's discretion when the argument has been permitted.

Finally, the result must be evaluated in the context of the case as a whole. Beyond question, the facts showed the instrumentality which caused the injury to have been under Liberty's exclusive control and the event certainly was one which does not originally happen when those in charge use care. Liberty had acquired the hitch, its employees had installed and were using it and Liberty therefore was in a superior position to know what went awry. Liberty offered no explanation for the detachment of the compressor and the projectilelike collision of the trailer with the building. The prospect that omission of reference to the absence of a safety chain would have affected the outcome of this case is so remote as to be insignificant.

Next, Liberty addresses another facet of the safety chain issue arguing that it was error for the court to permit testimony by Liberty's driver Cocks, called as a witness by Carter, to the effect that the purpose of

safety chains is to prevent accidents of this nature from happening. This was error, Liberty asserts, because no showing was made of expertise by Cocks on the subject.

■ The trial transcript fails to show with certainty that Cocks actually answered the question which was separated from the witness's response by a lengthy colloquy pertinent to the objection. After the question was reread by the reporter, Carter's attorney inquired: "Do you understand the question?" And Cocks answered: "I think I do. Yes." From this, the parties assume Cocks was affirmatively stating that safety chains function to prevent accidents when the primary connection by the hitch fails. Even assuming the testimony to have this import, the point is without merit.

In stating the purpose for having safety chains, Cocks was expressing no opinion on the technical properties of chains, the method of attachment of trailers or stresses under various loads, all of which would require specialized knowledge, but was only stating that which was obvious—that a safety chain is an extra precaution to afford a backup connection. Moreover, when Carter's attorney attempted to elicit from Cocks what experience he had with safety chains on other vehicles, Liberty objected that the line of questioning was not pursued either as to Cocks' experience or his opinion as to the failure of the Liberty vehicle to have such a chain.

Finally, Liberty complains of the trial court's response to a question submitted in writing from the jury room during deliberations. The question was: "In 1972 was it a Missouri state law to have a safety chain on a hitch?" The written answer sent by the court to the jury read: "The court cannot answer your question or instruct you further." Liberty made no objection or any record at the time of the event but now contends there was an affirmative duty on the court to answer the inquiry by instructing the jury that it could not consider the presence or absence of a statute requiring safety chains.

In this point, Liberty makes no objection to the content of the court's reply but contends that the response should have been enlarged by affirmative instruction not to consider a possible statute on safety chains. The thrust of Liberty's argument is that the question demonstrates misconduct of the jury in deciding the case on the absence of a safety chain and a possible statute on the subject.

■ Had the court supplemented the previous instructions by one during deliberations in the content Liberty now suggests, it would have fallen into error. There is no basis to assume that the jury decided this case on a presumed statute covering safety chains, nor would it have been proper for the court to instruct on such a statute neither within the law nor the evidence of this case. There is a presumption that the jury decided a case on the facts in evidence and the law contained in the instructions and the mere fact that a question is relayed to the court during deliberations will not convict the jury of misconduct and require a mistrial. *Beste v. Tadlock*, 565 S.W.2d 789 (Mo.App.1978).

The judgment is affirmed.

All concur.